## Thomas Parker *vs.* State of Maryland.

*Rape—Evidence—Complaint of Prosecutrix—Declarations— Excluding Witnesses from Court Room—Effect of Disobedience of Order of Exclusion.*

On the trial of a prisoner charged with the commission of rape, it is competent to prove, on the examination in chief, that the party alleged to have been injured made complaint while the injury was recent; but the details and circumstances of the transaction cannot be proved on such examination by her declarations.

At the beginning of a trial of an indictment for rape, the Court ordered that the witnesses on both sides should be excluded from the Court room, and a material and competent witness for the accused, in disobedience of the Court's order, remained in the Court room during the examination of the witnesses. For this reason the Court refused to allow the witness to testify. On appeal it was HELD:

That the traverser could not be deprived of the benefit of the testimony of such witness because of his misconduct in disobeying the order of the Court.

APPEAL from the Circuit Court for Prince George's County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, and BRYAN, J.

*George C. Merrick*, and *Daniel R. Magruder*, for the appellant.

*Charles B. Roberts, Attorney-General*, for the appellee.

BRYAN, J., delivered the opinion of the Court.

The indictment against the prisoner contained two counts. The first charged that he had committed a rape on the person of one Kitty Wills, and the second charged an assault upon her with intent to commit a rape. He was acquitted on the first count and convicted on the second. The case comes before us on two bills of exception taken at the trial.

The first bill of exception states that the prosecuting witness gave evidence tending to show the commission of the offence charged in the indictment by the prisoner, on a certain Saturday. There are two offences charged in the indictment; we presume the offence intended to be designated is the rape, and not the assault with intent to commit it. The mother of the prosecuting witness then testified that on Friday after the Saturday on which the assault was alleged to have been committed, she found her daughter's drawers under certain steps with blood stains upon them. She was then asked this question by the State: "What did the girl, Kitty Wills, say on that occasion was the reason she had hid the drawers?" Objection to the question was overruled by the Court, and the witness was permitted to answer it. The answer is thus stated in the bill of exception: "Whereupon, the witness, in answer, stated that the girl, crying all the time, said: "Now, mother, if you will make me a faithful promise not to whip me, I will tell you the truth about it: uncle Tom Parker took me up in his arms and threw me down on the ground, pulled up my clothes, and put something in me sharp like a knife, and made me cry; when I got up, I said I was going back home and tell my mamma, and he said if I did, he would kill me and throw me in the river, and run for his life; he told me to hide the drawers, and if you said anything about them, to tell you to come to him." It would have been competent to prove on the examination in chief that the party alleged

Parker *vs.* State.

to have been injured made complaint while the injury was recent; but the details and circumstances of the transaction cannot be proved on such examination by her declarations. 1 *Greenleaf's Evidence, section* 102. The offer now under consideration was an attempt to prove by her declarations that she had hidden her drawers and shew her motive for hiding them. When an outrage has been committed on a woman, the instincts of her nature prompt her to make her wrongs known, and to seek sympathy and assistance. The complaint which she then makes is the natural expression of her feelings. It may therefore be shown in evidence as a circumstance, which would usually and probably have occurred in case the offence had been committed. But the evidence which the Court admitted is not of this nature. It is simply hearsay; a narration of a past event, and not the language of any emotion caused by the supposed occurrence.

At the beginning of the trial, the Court ordered that the witnesses on both sides should be excluded from the Court room. It appeared that one Mary Edelin, a material and competent witness for the traverser, in disobedience of the Court's order had remained in the Court room during the examination of the witnesses. The Court for this reason refused to permit her to testify. It was in the discretion of the Court to order the witnesses to leave the Court room; but it is not reasonable to take away from a prisoner on trial the benefit of testimony on which his life may depend, because of the misconduct of another person.

The humanity of the law is shocked at the punishment of the innocent. It provides with the greatest solicitude that persons accused of crimes shall have fair and impartial trials. The object is considered of sufficient importance to be guaranteed by the solemn and impressive declarations of our organic law. The scheme and theory of our legal system seek to provide that no man shall be

adjudged guilty, unless the truth of the matter charged upon him has been established after a fair and full investigation. The ascertainment of the truth is the great end and object of all the proceedings in a judicial trial. But this object is pursued by general rules which experience has shown to be useful in guarding against erroneous conclusions. By the operation of these general rules, certain well defined classes of persons are forbidden to testify. Subject to these well-known and distinctly marked exceptions, a person on trial has the right to prove the truth relating to the accusation against him by the evidence of all witnesses who have any knowledge of it. And they are compelled to attend and deliver their testimony in his behalf. Since such great care has been taken to secure the right of an accused person to prove the truth relating to the accusation against him, it would be very strange, if he should forfeit this most precious privilege by the misbehaviour of a witness. Authorities were cited at the bar for the purpose of showing that in some jurisdictions it was within the discretion of the Judge to refuse to permit a witness to testify under the circumstances stated in the second exception. If the evidence of such witness would show the innocence of a prisoner on trial for his life, then the discretion of the Judge to admit or reject the testimony amounts to a discretion to take the prisoner's life, or to spare it. The wise, just and merciful provisions of our criminal law do not place human life on such an uncertain tenure. A man's life and liberty are protected by fixed rules prescribed by the law of the land, and are not enjoyed at the discretionary forbearance of any tribunal. All suggestions of this kind are alien to the spirit and genius of our jurisprudence.

*Rulings reversed, and*
*new trial ordered.*

(Decided 21st June, 1887.)