## FRAZIER *v.* WATERMAN STEAMSHIP CORPORATION

[No. 69, October Term, 1954.]

436

438

*Decided March 14, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Amos I. Meyers,* with whom was *W. Wallace Rynhart* on the brief, for the appellant.

*Randall C. Coleman, Jr.,* and *Southgate L. Morison,* with whom were *Ober, Williams, Grimes & Stinson* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiff brought suit in the Superior Court of Baltimore City against Waterman Steamship Corporation, owner of the S. S. "La Salle", for permanent injuries alleged to have been sustained by him, while working as a stevedore aboard that vessel, as a result of a fall through a hatch from one deck to another. At the time of the fall the ship was docked at a pier in the harbor of Baltimore. The plaintiff's suit was based upon alleged negligence of the defendant as owner of the ship and upon alleged unseaworthiness of the vessel. The case was tried before a jury. The trial judge directed a verdict for the defendant on the issue of negligence and submitted the case to the jury on the issue of unseaworthiness. The verdict was in favor of the defendant, judgment was entered thereon, and the plaintiff appeals from the judgment.

The appeal seeks a review of some eighteen points and rulings, which may be stated relatively briefly as follows:

*First,* two questions arising in connection with the exclusion of witnesses during the trial: one, whether the testimony of stevedore witnesses for the defendant should have been excluded for alleged violation of the exclusion of witnesses rule; the other, whether the trial judge erroneously stated to the jury that the action of one of the defendant's counsel was proper in interviewing witnesses during the trial after the plaintiff's testimony had been given, but before these witnesses had testified and while the exclusion rule was in force.

*Second,* the question whether or not the case should have been submitted to the jury on the issue of the defendant's negligence.

*Third,* two rulings excluding testimony sought to be elicited from the manager of the insurance carrier for Ryan Stevedoring Company as to (1) the unimportance to the insurer of the cause of the plaintiff's injuries, and (2) business relations between the Stevedoring Company and the defendant.

*Fourth,* two rulings relating to the plaintiff's medical history given to two physicians.

*Fifth,* a ruling on evidence as to the comparison of grease said to have been found at two different places.

*Sixth,* a ruling (or two substantially identical rulings) on the plaintiff's testimony relating to the presence of a drawing on a signed statement to the insurance carrier.

*Seventh,* the denial of the plaintiff's motion for a mistrial based upon a statement with regard to payments of workmen's compensation which the court permitted the defendant's counsel to make in argument to the jury.

*Eighth,* two rulings pertaining to the admission of hospital records.

*Ninth,* five other objections to rulings on evidence,— two of which are based on uncertainty, two on evidence as to the absence of prior complaints relating to the area where the plaintiff fell, and one on an allegedly unresponsive answer to a question.

*Tenth,* whether the trial judge should have commented upon counsel's "arguing" with a witness.

Most of the facts are not in dispute. The plaintiff went aboard the "La Salle" as a member of a stevedoring "gang" employed by Ryan Stevedoring Company to unload cargo consigned to Baltimore in the No. 2 tween deck hold of the vessel. The hatches giving access to this hold are 37½ feet long and 20 feet wide. At the main deck, shelter deck and tween deck the hatches are closed, when not in use, by hatch boards or covers, which fit into the coaming surrounding the hatch and are supported by steel beams spaced at intervals across the hatch. When the hatch is to be opened, the boards are removed by stevedores, who use hooks which catch fittings at each end of the boards to lift them. The stevedores then pile the boards on either side of the hatch. The steel beams are mounted on wheels which run in grooves along the sides of the hatch coaming. These wheels are equipped with fittings for greasing and the bearings inside the wheels are greased. While the plain-

tiff was helping to remove the hatch covers on the shelter deck, he slipped or lost his balance in some manner, and fell through the open hatch to the tween deck, a distance of about fifteen feet.

The principal controversy on the facts is with regard to the cause of his fall. The plaintiff's claim is that he slipped on some grease at a point where grease from the wheels on the beams supporting the hatch covers on the main deck dripped down to the shelter deck. The defendant denied that any grease was there.

FIRST. EXCLUSION OF WITNESSES.

Probably because of the anticipated conflict in testimony on this point the plaintiff asked, and the defendant agreed, that the witnesses should be excluded from the courtroom, except when actually called to testify, and the trial judge so ordered. The plaintiff and a witness called by him, another stevedore by the name of Harris, testified to the presence of grease and to the plaintiff's having slipped on it. The defendant's witnesses were excluded during the giving of this testimony. After the conclusion of the plaintiff's testimony and the adjournment of court for that day, one of the defendant's counsel (Mr. Coleman) took the defendant's witnesses over to his office for consultation before putting them on the stand when the trial resumed. During this conference the fact was stated by counsel that both the plaintiff and Harris had testified as above set forth. When the trial was resumed, it developed during the cross-examination of the defendant's witness, Corman that the conference had been held and defendant's counsel, Mr. Coleman, rose to make a statement. Counsel for the plaintiff, Mr. Meyers, suggested that counsel approach the bench. Mr. Coleman stated that either at the bench or in open court was agreeable to him. A recess followed during which a conference was held in chambers between the judge and opposing counsel.

It also developed during the trial that on the day before the trial opened counsel for the plaintiff had gotten in contact with Corman and another of the stevedore wit-

nesses who later testified for the defendant and had questioned them about the presence of grease.

Toward the end of the trial, the following statements were made before the jury:

"(The Court) There has been considerable discussion in examination and cross examination about counsel interviewing witnesses in the office. Of course, you know it is perfectly proper for a lawyer trying a case to interview witnesses before the trial and during the trial. There is nothing improper about that: In other words, it would be a rather poor lawyer who did not discuss with his witnesses the testimony he was going to give. It is perfectly proper and there is to be no undue circumstance about the counsel talking to witnesses.

(Mr. Meyers) It is also perfectly proper for me to ask a witness where he was yesterday and to obtain a truthful answer from him.

(The Court) Yes, that is perfectly proper. Counsel have also asked me to tell you that it is perfectly proper for counsel about to try a case to talk to a hostile witness, witnesses on the other side. There is nothing improper about getting in touch with them.

(The Court) I said there was nothing improper in any lawyer interviewing a witness before the trial or during the trial."

The appellant claims that the conference in the office of counsel for the appellee and the disclosure of the testimony given by the plaintiff and by Harris constituted a violation of the exclusion of witnesses rule and that the testimony of the defendant's witnesses who attended the conference should have been excluded. He further contends that the trial court should have granted his motion for a mistrial based upon the alleged violation of the rule.

The appellee vigorously denies the charge of wrongdoing and asserts that there was no violation of the rule.

It seems evident that the appellee's counsel should have borne in mind the sequestration order and that he should have applied to the court for permission to disclose to the defendant's witnesses the substance of the testimony

of the plaintiff's witnesses before proceeding to do so. His failure to seek such authorization appears to have been due to inattention or inadvertence and not to any deliberate intent to circumvent the rule. The comment of the trial court above quoted indicates that such permission would have been given, if it had been asked.

The more important question is whether the rulings of the trial court were erroneous and prejudicial to the appellant.

The practice of excluding witnesses is well established. *Parker v. State,* 67 Md. 329, 10 A. 219; *Jones v. State,* 185 Md. 481, 45 A. 2d 350; *Wigmore* on *Evidence,* 3rd ed., Secs. 1837, *et seq.*

The *Parker* and *Jones* cases appear to be the only cases in which this Court has been called upon to express itself with regard to the rule. In each case it is recognized that the problem is one committed to the discretion of the trial court, but the exercise of that discretion is reviewable in this Court. In the *Parker* case, the exclusion of the testimony of a witness for the defendant in a criminal case, where the witness had violated the rule without the connivance of the defendant, was held erroneous. In the *Jones* case, the refusal of the defendants' motion for the exclusion of witnesses in a criminal case was also held to be erroneous.

Neither of these cases is on all fours with the present case. Of the out of State authorities, *Capitol Cab Corporation v. Anderson,* 85 N. Y. S. 2nd 767, affirmed 100 N. Y. S. 2nd 39, seems closely analogous on its facts. In that case the sequestration of witnesses rule had been invoked. During a recess, defendant's counsel spoke with defendant's witnesses in the corridor. This came to the attention of the plaintiff's counsel and he referred to it in his statements to the jury. The defendant's counsel moved for a mistrial on the ground that the statements by the plaintiff's counsel were improper in that they conveyed the impression that the conduct of defendant's counsel was sinister and that the defendant's witnesses were influenced to give untrue testimony. This motion

was held in abeyance, the case went to the jury and resulted in a verdict for the plaintiff. The court thereafter granted the motion for a mistrial.

A full review of other cases which have considered violations of the exclusion of witnesses rule and which have been carefully collected and cited by the appellant would not solve this case, because of differences on their facts. There are, indeed, several different views which have been taken by various courts as to the effect of the violation of the exclusion rule. See 53 *Am. Jur., Trial,* Section 33.

*Wigmore, Evidence,* 3rd ed., Sec. 1842, states that it is within the power of the trial court to refuse to admit the disobedient person to testify and that the power to exclude his testimony should be exercised if "there appears any reason to believe that the proposed testimony was important, that the witness had heard the other testimony, and that he wished to know its tenor." Later in the same section, the author refers to a proviso attached by some courts, which is that the witness should not be disqualified unless the party connived in violating the rule.

Whether or not the testimony of the defendant's stevedore witnesses should have been excluded was a question within the discretion of the trial court, and in reviewing the exercise of that discretion we must, of course, consider the facts of this particular case. Wigmore's text above quoted does not take into account (except perhaps inferentially) what seems to us an important and decisive fact in the instant case. That fact is, that the defendant and its witnesses were informed before the trial began of the substance of the expected testimony of both the plaintiff and Harris. Well before the trial, counsel for the defendant had obtained a signed statement from Harris, and the plaintiff's pre-trial deposition had also been taken well in advance. It, therefore, is very improbable that the defendant's witnesses could have been told of anything substantial and new on the basis of the testimony given in court

by Harris and the plaintiff, and the record does not support any opposite conclusion. This observation is as applicable to the relatively less important matters (such as whether Harris or someone else was working as the plaintiff's partner) upon which their testimony conflicted with that of the defendant's witnesses, as to the issue of the presence or absence of grease. Harris' statement given in November, 1953, mentioned grease rather extensively, and the plaintiff's declaration alleged the presence of a "slippery and greasy substance" on the deck. The plaintiff's pretrial deposition is not in the record, and its contents consequently are not before us.

Bearing these facts in mind, we are of the opinion that the interviewing of witnesses by counsel for the appellee did not result in any defeat or circumvention of the purpose of the sequestration rule; and also bearing in mind the statement of our predecessors in *Parker v. State, supra,* that "The ascertainment of the truth is the great end and object of all the proceedings in a judicial trial," we think that the complete exclusion of the testimony of witnesses for a violation of the sequestration rule is not lightly to be imposed as a penalty upon even an offending party. Here, if there was any violation of the rule, its effect was not great, since, as we have already stated, nothing which was both new and substantial was disclosed to the defendant's witnesses. To exclude their testimony in these circumstances would tend to suppress, rather than to develop, the truth.

We hold that the trial judge properly exercised his discretion in refusing to strike out the testimony of these witnesses.

The second branch of the appellant's contentions based upon the exclusion of witnesses rule is that the comment of the court to the effect that there was nothing improper in the conduct of the defendant's counsel in interviewing these witnesses deprived the plaintiff of the opportunity to challenge their credibility before the jury because of the violation of the sequestration rule.

The record indicates that this contention is unfounded. During a conference between court and counsel the following colloquy took place:

"(Mr. Meyers) I suggest Your Honor, that I may in my argument to the Jury point out that I requested Your Honor to exclude all witnesses, and that was agreeable and granted by the Court and agreed to by counsel on the other side, and that my purpose in excluding of witnesses was to be able to cross examine them on facts about which they knew, and not about facts which they heard spoken in the Court Room or heard about being spoken in the Court Room. I know that in some cases it is difficult to keep witnesses from hearing things just like the Court takes cognizance of the Jury reading a newspaper account of things, and when things like that happen appropriate steps are taken to prevent such happenings. In this particular case the witnesses came into the Court Room not equipped in their own ideas of what happened but also with the ideas of what they had heard from previous Court Room testimony, and so I should be permitted to present that so that the Jury can understand that a true exclusion of witnesses did not take place in this case and they can weigh the evidence that came in after being told of the previous testimony, weigh that evidence in the light that they were not excluded but that they heard the evidence almost the same as if they had actually been in the Court Room to hear it.

(The Court) I will permit the comment on that."

Then, in response to an inquiry by one of the appellee's counsel, the trial judge indicated that a motion by the defendant that counsel for the plaintiff be not permitted to make such an argument, or for a mistrial, would be overruled. The argument was later made, and the defendant's motion was made and overruled.

SECOND. THE ISSUE OF NEGLIGENCE.

The appellant asserts that his suit is brought under the Jones Act, 46 U. S. C. Section 688, which provides: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain

an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply." The statutes applying to railway employees referred to above are contained in the Federal Employees' Liability Act, 45 U. S. C., Sections 51 *et seq.*

The Jones Act does not permit a longshoreman to sue a vessel owner, because that Act applies only to suits by an employee against his employer and a longshoreman is ordinarily not an employee of the vessel owner. *Cosmopolitan Shipping Co. v. McAllister*, 337 U. S. 783; *Swanson v. Marra Bros., Inc.*, 328 U. S. 1; *Continental Casualty Co. v. Thorden Line*, 186 F. 2d 992 (U. S. Ct. of Appeals, 4th Circuit). The plaintiff was a longshoreman and there is no evidence to show that he was an employee of the owner of the ship. Hence the Jones Act appears inapplicable to this suit, and in view of our conclusions stated below, it does not appear that, if applicable, the Jones Act would have aided the plaintiff in this case.

Prior to the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C., Section 901 *et seq.*, which was passed in 1927, a longshoreman could sue his employer under the Jones Act (*International Stevedoring Co. v. Haverty*, 272 U. S. 50; *Jamison v. Encarnacion*, 281 U. S. 635); but since the passage of the Harbor Workers Act, he no longer can do so. (See the *Cosmopolitan Shipping Co., Swanson* and *Continental Casualty Co.* cases above cited.)

Since the accident occurred on navigable waters of the United States, a tort action based upon it is governed by the Federal maritime law. *Atlantic Transport Co. v. Imbrovek*, 234 U. S. 52; *Garrett v. Moore-McCormack Co.*, 317 U. S. 239; *Pope & Talbot, Inc. v. Hawn*, 346 U. S. 406. The plaintiff, though erroneously basing his claim on the Jones Act, does allege negligence on the part of the defendant.

The Federal maritime law recognizes negligence and unseaworthiness as bases for liability on the part of a ship owner, and a very recent pronouncement on the subject by a majority of the Supreme Court indicates that a longshoreman may sue a ship owner on either ground, and also that liability for unseaworthiness may be established by much less proof than would be required to establish negligence. See *Pope & Talbot, Inc. v. Hawn,* above cited.

In this case the plaintiff relies on his own testimony and that of Harris to establish that there was grease on the shelter deck hatch coaming and that it dripped from the wheels at the ends of the beams supporting the hatch covers on the deck above. There was no testimony that anyone had seen grease drip from one deck to the other. There was also no testimony to show how long the grease had been there or to show that the ship's officers or crew knew of its presence. (All of the witnesses who testified on the subject, other than Harris and the plaintiff, said that there was no grease on the shelter deck hatch cover or coaming.) There was no claim of inadquate lighting. On this state of the proof (and without regard to the denials of the presence of grease by the defendant's witnesses), we are inclined to the view that the trial judge was correct in directing a verdict for the defendant on the issue of negligence. *Daniels v. Pacific-Atlantic S. S. Co.,* 120 F. Supp. 96; *Adamowski v. Gulf Oil Corp.,* 93 F. Supp. 115; *Cookingham v. U. S.,* 184 F. 2d 213 (*cert.* den., 340 U. S. 935); *Guerrini v. U. S.,* 167 F. 2d 352. Since the plaintiff elected to sue in a State court in Maryland (See 28 U. S. C., Section 1333), the law of this State with regard to what must be shown to establish negligence also appears pertinent; and this, too, tends to support the action of the lower court on this issue. See *Montgomery Ward & Co. v. Hairston,* 196 Md. 595, 78 A. 2d 190; *Lusby v. Baltimore Transit Co.,* 195 Md. 118, 72 A. 2d 754, both of which emphasize the need of proof that the defendant knew or ought to have known

of the existence or presence of a dangerous condition. Cf. *Grzboski v. Bernheimer-Leader Stores,* 156 Md. 146, 143 A. 706. See also *Smith v. Hercules Co., et al.,* 204 Md. 379, 104 A. 2d 590, which is the most recent decision of this Court dealing with a suit by a longshoreman to recover damages for injuries received while working on board a ship in nevigable waters. In that case (*inter alia*) it was held that a steamship owner had not failed in the duty to furnish a safe place to work, and it was pointed out that this duty was not an absolute one, but was only to use reasonable care to furnish a reasonably safe place to work. In other words, the ship owner was not held to the liability of an insurer.

A decision on the direction of a verdict for the defendant on the issue of negligence is not, however, really necessary. This is because of the instruction which the trial judge gave on the subject of seaworthiness. The appellee contends that it was also entitled to a directed verdict on the issue of seaworthiness and that the instruction given on this question was more favorable to the plaintiff than it should have been. This question, too, need not be decided. The trial judge instructed the jury in part as follows:

"* * * if you find that there was grease on the hatch cover or hatch coaming or the shelter deck, and find that the plaintiff slipped on the grease and that the grease came from the hatch beams of the main deck, you could find the ship was thereby unseaworthy and the plaintiff was entitled to recover."

The above quotation is taken almost word for word from an instruction requested by the plaintiff and given by the trial judge, and constitutes the concluding part of that instruction.

The trial judge next pointed out to the jury that if the act which caused the unseaworthiness was committed by a member of the crew, this would not absolve the owner of the vessel. He then instructed the jury that the owner owes the same protection against un-

seaworthiness to stevedores as to seamen, that the term "seaworthy" is a relative term, but that "the basic thought is that the vessel shall be equipped to perform the duty or [of ?] safety that it owes to human beings aboard and the cargo which it carries, and the equipment must be maintained in a safe condition in order to make the vessel seaworthy." Then followed this paragraph:

> "You are instructed if you find that the ship, the La Salle, was unseaworthy by virtue of grease falling from the hatch beams of the main deck thereby causing the plaintiff to slip and fall and that the ship was unseaworthy thereby, and you so find, then the plaintiff is entitled to recover without proving negligence."

This instruction is taken practically verbatim from a prayer submitted by the plaintiff.

It will be noted that under these instructions, all that the plaintiff had to establish in order to be entitled to recover was as follows: (1) that there was grease on the shelter deck at the place where he slipped; (2) that it came from the hatch beams or rollers on the deck above; and (3) that the grease caused the plaintiff to slip and fall. Whether the plaintiff sought to recover for negligence or unseaworthiness, proof of these facts was essential to his case. The instructions permitted the jury to find for him on the basis of unseaworthiness by the establishment of these facts and specifically dispensed with any obligation on his part to prove, in addition, negligence on the part of the defendant. (Compare *Pope & Talbot, Inc. v. Hawn, supra.*) Under these instructions the jury found against the plaintiff, which means that his proof must have failed to satisfy the jury on one or more of the facts which would have been equally essential to his success on a claim based upon negligence. Under such circumstances, the withdrawal of the issue of negligence, even if it had been erroneous (which we do not hold), was not prejudicial to the plaintiff.

We have carefully examined the whole charge, the exceptions to it and the modification of the original charge which the trial judge made to eliminate any consideration by the jury of either primary negligence or contributory negligence, and we find nothing which would warrant a reversal of the judgment because of the manner in which those matters were dealt with.

Because of the views above expressed it is unnecessary to go into the effect of contributory negligence under maritime law upon liability for either negligence or unseaworthiness.

### THIRD. RULINGS ON QUESTIONS PUT TO MANAGER OF INSURANCE CARRIER.

The plaintiff's counsel asked the manager of the workmen's compensation insurance carrier for the plaintiff's employer, Ryan Stevedoring Company (Ryan) two questions to which objections were made and sustained.

The first was in substance whether the way in which the plaintiff was injured would make any difference to the insurance carrier. The evident purpose of this question was to minimize an apparent discrepancy between what the plaintiff said in his statement to the insurance company as to how the accident happened and what he said in court. In the insurance statement there was no reference to having slipped on grease; in court it was the foundation of the plaintiff's claim. The question seems argumentative, and we find no error in the court's ruling on it.

The other question was asked after the witness had testified that his company was still the insurer for Ryan. The question was this: They [presumably Ryan] are still doing business with Waterman Steamship Company [the defendant], are they not? The relevance of this question is not apparent. The appellant's brief states that this insurance company's representative "was the only witness available to establish that Ryan Stevedoring Company although a separate corporation, is a subsidiary of Waterman Steamship Company." The appellant argues in this Court that the sustaining of an objection

to this second question deprived him of the "very important argument" that the stevedore witnesses "who violated the exclusion rule with the connivance of counsel for * * * the defendant, were actually employees of * * * a subsidiary of * * * the defendant." Certainly, the question asked was not whether Ryan was a subsidiary of the defendant, nor was there any proffer of proof to that effect, nor was it shown that this witness was qualified to testify on this subject. It would have required clairvoyance to have guessed that the answer to a question as to whether two companies were still doing business with each other would have shown that one was a subsidiary of the other. The question actually asked seems irrelevant; the unasked question was not presented for a ruling. We, therefore, cannot act on it. Rule 9 of the Rules of this Court Relating to Appeals.

FOURTH. PLAINTIFF'S MEDICAL HISTORY.

The trial court sustained an objection to a question asked the plaintiff as to what he had told Dr. Coblentz, a neurosurgeon who had examined him as the result of a suggestion by Dr. Ullrich. Dr. Coblentz gave the plaintiff's case history during his own testimony. The question propounded to the plaintiff seems improper; but if it had been proper, no prejudice resulted to the plaintiff from this ruling.

The latter comment is also applicable to the sustaining of the objection to a question directed to Dr. Ullrich as to what history the plaintiff gave him. His report to the insurance company, which included the plaintiff's case history, was introduced into evidence by the plaintiff, so that the evidence came into the case. Furthermore, an examination of this report shows nothing which would support the plaintiff's claim as to how the accident happened.

FIFTH. TESTIMONY AS TO COMPARISON OF GREASE.

The witness Harris was asked to compare grease which he said was on the hatch coaming where the plaintiff slipped with grease on the rollers. An objection

to the question was sustained. Two pages later in the transcript he testified that it was "all dark colored grease on hatch coamings and on rollers and on the tracks." The testimony thus came in. The contention is without merit.

SIXTH. TESTIMONY RELATING TO A DRAWING ON A STATEMENT TO THE INSURANCE CARRIER.

The plaintiff testified that he did not remember a drawing at the end of a statement which he signed and gave to the insurance carrier. He then testified that he did not remember how much space there was between the last sentence and the place where he signed. Later he testified that he did not remember whether the drawing was there or not. In his brief, complaint is now made that he was not allowed to testify that the drawing was not there. How he could have so testified in the face of his subsequent denial of memory about it is not explained. The point is devoid of merit.

SEVENTH. STATEMENTS ABOUT PAYMENTS OF WORKMEN'S COMPENSATION.

This matter requires only brief comment. The plaintiff's counsel injected the matter of workmen's compensation into the case at the outset. It was within the discretion of the trial court to permit counsel for the defendant to make a short and accurate statement to the jury on the subject.

EIGHTH. ADMISSION OF HOSPITAL RECORDS.

Hospital records have repeatedly been held to be admissible in evidence, and the appellant's objection to the admission of such records in this case is based upon the fact that the court reopened the case to permit their introduction. We find nothing to indicate that the plaintiff was prejudiced by the rulings of the court, and we think that this matter also was within the discretion of the trial court.

NINTH. SUNDRY RULINGS OF EVIDENCE.

The appellant objected to the testimony of two witnesses on the ground of uncertainty. Both objections seem unsubstantial.

He also objected to testimony as to the absence of prior complaints about grease relating to the area where the plaintiff fell. Such testimony seems to us to have some relevance and to have been properly admitted.

The appellant also objected to the trial court's refusal to strike out a part of an answer given by the witness Corman on direct examination on the ground that it was not responsive to the question. The statement was that when he examined the hatch covers he saw nothing which would cause a man to fall. He gave substantially the same testimony later. We see no prejudicial error, if there was arror at all, in the trial court's allowing the answer to stand.

### TENTH.

The appellant's objection to the fact that the trial court did not make some comment upon opposing counsel's asking a witness a question described as argumentative is too trivial to require discussion. No request for any such comment was made, nor do we see any reason why it should have been granted if it had been made.

We find no reason to disturb the judgment of the trial court.

*Judgment affirmed, with costs to the appellee.*