655 A.2d 390

**Augustus REDDITT**

v.

**STATE of Maryland.**

No. 72, Sept. Term, 1994.

Court of Appeals of Maryland.

March 10, 1995.

622

Margaret L. Lanier, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Tarra DeShields–Minnis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief) Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RODOWSKY, Judge.

Petitioner, Augustus Redditt (Redditt), was convicted on multiple counts of robbery with a deadly weapon and related offenses following a jury trial. At that trial the court would not permit a defense witness to take the stand in order to give proffered evidence of improper motive, or bias, on the part of the principal prosecution witness. The basis for exclusion was a violation of the court's order sequestering witnesses, because the defense witness was in the courtroom during a limited examination of the prosecution witness when that witness was recalled in the defense case. Under the circumstances described below, and for the reasons set forth below, we reverse the conviction.

On Saturday, May 23, 1992, at approximately 11:30 p.m., Cheryl Denise Stokes (Stokes), Nicole Vennie (Vennie), and Veronica Matthews (Matthews) arrived in Vennie's car at a bowling alley on Security Boulevard in Baltimore County. They planned to attend a "Rock-n–Bowl" event which they believed began at midnight. As they walked from Vennie's parked car to the building, they noticed a light-blue, Buick Skylark automobile also parked on the parking lot, but with its engine running. Approximately three parked cars separated Vennie's car from the Skylark. The Skylark was occupied by two males.

After learning that the event began at one a.m., the three women left the building to return to their car. As they were walking between parked cars, with Stokes and Matthews in front and Vennie close behind, they were confronted by two men, one at each end of the aisle between cars. Stokes saw that the Skylark was unoccupied and that its door was open.

The man in front of the group of three women, later identified as Redditt, put a gun to Stokes's head. He ordered Vennie to take off her jewelry. Vennie was nervous, and the

man ordered Stokes to help her. Stokes refused, complaining that she was too nervous to help. The other man was taking jewelry from Matthews. Vennie attempted to hide her rings from the man with the gun but he noticed them and demanded that she remove them.[1]

When all the jewelry was removed, the men ran to the Skylark and sped away. The women, with Vennie driving, gave chase, only to be stopped for speeding by a Baltimore County police officer, James P. Conaboy (Conaboy). They reported the offense and gave the officer a general description of the men. The man with the gun was described as "a black male, mid–20s, thin build, about five nine." They described the car, and Vennie said its Maryland license plate was PMB 002.

That license was registered to a 1983 Oldsmobile principally garaged in Bel Air, Maryland. Officer Conaboy then inverted the M into a W and found that PWB 002 was registered to a blue Buick Skylark that had been reported as stolen.

The next evening at approximately 11:45 p.m. a Baltimore City police officer arrested Redditt after effecting a stop of the car Redditt was driving, the light blue, Buick Skylark with Maryland tag PWB 002. Redditt fled the vehicle after the stop, but he was apprehended after a two block chase.

One month later, on June 22, Officer Conaboy showed Stokes a photographic array. Her contemporaneous written description of the identification made by her on that occasion was that "[n]umber three looks a lot like him, but I believe his head was a little smaller." Number three in the array was Redditt.

Vennie was shown the same photo array, but she could not identify Redditt. Matthews was never shown the array.

---

1. No property was taken from Stokes. Although the charging document in the District Court of Maryland charged, *inter alia*, crimes of which Stokes was the victim, the supervening criminal information on which Redditt was tried alleged robbery and robbery with a deadly weapon of both Vennie and Matthews, and it alleged handgun offenses related to the robberies of those two victims.

On a motion *in limine* the trial court precluded testimony that the Skylark that Redditt was driving at the time of his arrest was stolen.

Trial was held on February 4, 1993, commencing at 10:00 a.m. After selection of the jury and completion of opening statements, the court, on motion by Redditt that the State's witnesses be sequestered, ordered that all witnesses be sequestered. All of the evidence in the case was taken by 1:30 p.m. that same day. In addition to the facts described above, Stokes and Matthews made in-court identifications of Redditt. At the conclusion of the State's case Redditt waived his right to testify, and defense counsel indicated that the defense witnesses would be Stokes and the defense investigator who was on call. The court recessed from 12:45 p.m. to 12:52 p.m.

When proceedings resumed Redditt called Stokes. Her examination as a defense witness comprises two pages of transcript, plus one question and answer. The two pages deal with why Stokes had never viewed a lineup, although Conaboy had asked her to do so. Then, defense counsel put the following question:

"Q. Ms. Stokes, do you recall making a statement to a young lady yesterday that you don't care who it is, somebody's going to pay?

"[PROSECUTOR]: Objection.

. . . .

"THE COURT: Wait a second. I'll overrule the objection on that.

"A. No, I did not."

Out of the presence of the jury, and while awaiting the arrival of the investigator, defense counsel inquired of the court:

"[W]ill I be allowed to call the young lady who she made that statement to in rebuttal?

"THE COURT: That isn't rebuttal. This is your case. You can call—I mean is it somebody who's been outside? Is it somebody—

"[DEFENSE COUNSEL]: No, it's somebody that's been sitting in the courtroom.

"THE COURT: Well, how—

"[DEFENSE COUNSEL]: She just told me the statement. During the recess I found out about it.

"THE COURT: Is there an objection?

"[PROSECUTOR]: Yes, your Honor.

"THE COURT: Yes. Number one, it's your own witness. This is your case. You called Ms. Stokes back as your own witness.

. . . .

"THE COURT: . . . [I]n any event, we're in the defense's case. Ms. Stokes was your witness, in addition to which the other—the witness that you want to call is somebody that certainly by the break you knew that you might want to call, and she sat through and listened to Ms. Stokes' testimony."

Redditt was convicted and sentenced. He appealed to the Court of Special Appeals where he argued that the circuit court "erred in refusing appellant the opportunity to impeach the State's key witness with a prior inconsistent statement." The intermediate appellate court, in an unreported opinion, rejected that argument. The appellate court noted that the first reason given by the trial court, *i.e.*, that Redditt would be impeaching his own witness, was no longer valid in light of the abolition of the voucher rule by former Maryland Rule 1–501, now Rule 5–607. The second ground relied upon by the trial court, violation of the sequestration rule, was a valid ground for excluding the witness from testifying, in the view of the Court of Special Appeals. That court reasoned that

"[d]efense counsel was informed during a recess of the alleged comment by Ms. Stokes to this witness. At that point, the defense should not have allowed the prospective witness to remain in the courtroom and listen to further testimony." [2]

---

2. The Court of Special Appeals also held that the trial court was correct in denying the testimony of the prospective defense witness because it

Redditt petitioned this Court for a writ of certiorari, which we granted. His petition presents this question: "Is the testimony of a defense witness which impeaches a key State's witness admissible in spite of a nominal violation of the sequestration rule?" There was no cross petition by the State.

## I

Former Maryland Rule 4–321, in effect at the time of Redditt's trial, provided in relevant part as follows:

"(a) *Exclusion.*—On motion of any party made before testimony begins the court shall order that witnesses other than parties be excluded from the courtroom before testifying, and it may do so on its own initiative or on motion of any party made after testimony begins. The court may continue the exclusion of a witness following the testimony of that witness if a party indicates that the witness may be recalled to give further testimony. . . .

"(b) *Order.*—The court may order the witness, parties, attorneys, and all other persons present in the courtroom not to disclose to any witness excluded under this Rule the nature, substance, or purpose of testimony, exhibits, or other evidence introduced during the witness' absence.

"(c) *Exclusion of Testimony.*—The court may exclude all or part of the testimony of the witness who receives information in violation of an order under this Rule." [3]

"The purpose of the sequestration of witnesses has been said to be to prevent them from being taught or prompted by each other's testimony." *Bulluck v. State,* 219 Md. 67, 70–71, 148 A.2d 433, 435, *cert. denied,* 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 85 (1959); *see also Brown v. State,* 272 Md. 450, 477,

---

was designed solely to impeach Stokes on a collateral matter. In this Court, the State does not make any argument seeking to sustain the judgment of the Court of Special Appeals on that alternate ground.

**3.** Rule 4–321 was rescinded effective July 1, 1994 and replaced by present Rule 5–615.

325 A.2d 557, 571 (1974); 6 J.H. Wigmore, *Evidence* § 1838, at 461 (Chadbourn rev. 1976) (Wigmore). The Court of Special Appeals has said:

> "The essential purpose of the Rule is to prevent one prospective witness from being taught by hearing another's testimony; its application avoids an artificial harmony of testimony that prevents the trier of fact from truly weighing all the testimony; it may also avoid the outright manufacture of testimony."

*Hurley v. State*, 6 Md.App. 348, 351–52, 251 A.2d 241, 244, *cert. denied*, 255 Md. 742 (1969).

■ When there has been a violation of a sequestration order, whether there is to be a sanction and, if so, what sanction to impose, are decisions left to the sound discretion of the trial judge. *Brown v. State*, 272 Md. at 477–78, 325 A.2d at 571; *Cunningham v. State*, 247 Md. 404, 417, 231 A.2d 501, 508 (1967), *cert. denied*, 390 U.S. 908, 88 S.Ct. 832, 19 L.Ed.2d 877 (1968), *vacated in part*, 408 U.S. 938, 92 S.Ct. 2867, 33 L.Ed.2d 757 (1972) (capital punishment); *Mayson v. State*, 238 Md. 283, 290, 208 A.2d 599, 603 (1965).

■ Violation of a sequestration order does not result in a *per se* exclusion of the witness's testimony. Rather, inasmuch as

> " '[t]he ascertainment of the truth is the great end and object of all the proceedings in a judicial trial,' we think that the complete exclusion of the testimony of witnesses for a violation of the sequestration rule is not lightly to be imposed as a penalty upon even an offending party."

*Frazier v. Waterman Steamship Corp.*, 206 Md. 434, 446, 112 A.2d 221, 226 (1955) (quoting *Parker v. State*, 67 Md. 329, 332, 10 A. 219, 220 (1887)); *see also Brown v. State*, 272 Md. at 478, 325 A.2d at 572; *Gwaltney v. Morris*, 237 Md. 173, 176, 205 A.2d 266, 268 (1964).

Maryland appellate courts have expressed some guidance for the exercise of discretion in this area. In *Brown v. State* this Court outlined one procedure that might be followed:

"When ... the trial court was notified of an apparent violation by the witness of the order of sequestration, it was then incumbent upon the trial judge to make an investigation pursuant to the discretionary power vested as to the imposition of any sanction. The inquiry then conducted by the trial court involved a question of law as to whether or not the testimony of [the offending witness] would remain admissible or be excluded."

272 Md. at 478, 325 A.2d at 572.

*Hurley v. State,* 6 Md.App. 348, 251 A.2d 241, emphasized whether the witness called by the State had remained in the courtroom as the result of design, and whether there was any prejudice to the accused, based on the purpose of the sequestration rule.

*McKnight v. State,* 33 Md.App. 280, 364 A.2d 116 (1976), *rev'd on other grounds,* 280 Md. 604, 375 A.2d 551 (1977), presents a review of the case law of Maryland and other jurisdictions and distilled the following principles.

" 'If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground merely, although the right to exclude under *particular circumstances* may be supported as within the sound discretion of the trial court.' "

*Id.* at 290, 364 A.2d at 121–22 (quoting *Holder v. United States,* 150 U.S. 91, 92, 14 S.Ct. 10, 10, 37 L.Ed. 1010, 1010 (1893) (emphasis added)).

" '[I]t was error for the trial court to disqualify a witness merely because of his disobedience to a rule requiring sequestration and in the absence of some showing of particular circumstances indicating that the witness remained in court with the consent, connivance, procurement or knowledge of the party seeking to use the witness or of his attorney.' "

*Id.* at 290, 364 A.2d at 122 (quoting *Robinson v. Tennessee,* 340 F.Supp. 82, 85 (E.D.Tenn.1972), *aff'd,* 474 F.2d 1273 (6th

Cir.), *cert. denied sub nom. Bailey v. Tennessee,* 414 U.S. 848, 94 S.Ct. 137, 38 L.Ed.2d 96 (1973)).

" 'If the order of exclusion is knowingly disobeyed, the court unquestionably has the power to refuse to admit the disobedient person to testify; and it ought to exercise this power, in its discretion, whenever there appears any reason that the proposed testimony was important, that the witness had heard the other testimony, and that he wished to know its tenor.' "

*Id.* at 291, 364 A.2d at 122 (quoting 6 Wigmore, § 1842, at 477).

In *McKnight* the trial judge had excluded the testimony of a defense witness. The Court of Special Appeals upheld the exclusion based upon the facts set forth below:

"The record reveals that the witness had been in court at least throughout the morning session, during which time the appellant and a series of alibi witnesses testified in the appellant's behalf. [The offending witness] had been summoned as a witness for the defense; counsel for the defense had specifically informed the court that morning that [the witness] would not be called. It was apparently obvious to the court that the witness had been seated in the courtroom the entire day. No explanation is given for the failure of the appellant or his counsel to detect his presence. It is further noteworthy that defense counsel made no proffer as to what the testimony of the witness would have been had he been allowed to testify. If he was another alibi witness, his testimony would have been merely cumulative. If he had substantive information concerning the charges against the appellant, counsel should have proffered to the trial court what that evidence would have been so that we would have it before us on review. Under all the circumstances, however, to hold that the trial court abused its discretion in refusing to allow [the offending witness] to testify would make the sequestration rule a nullity."

33 Md.App. at 293, 364 A.2d at 123.

The facts of a number of Maryland decisions demonstrate the extent to which the decision whether to exclude is influ-

enced by the degree of schooling in the details of the evidence obtained by the potential witness as a result of the sequestration order violation. For example, *Gwaltney v. Morris,* 237 Md. 173, 205 A.2d 266, was a wrongful death action. While the widow of the decedent was being cross-examined, three witnesses for the defendant entered the courtroom and remained for up to seven minutes before they were noticed by defense counsel. Two of the defense witnesses were adult children of the decedent by prior marriages. This Court held that there was no abuse of discretion in refusing to exclude the testimony of these witnesses. This was because

"their testimony was limited and in essence was to the effect that their father was a heavy drinker throughout his life, that the marital relationship between the decedent and [his widow] was not good, and a divorce was contemplated. It is improbable from the very nature of their testimony that they would in fact have learned anything which would assist them in testifying."

*Id.* at 176, 205 A.2d at 267.

Similarly, in *Frazier v. Waterman Steamship Corp.,* 206 Md. 434, 112 A.2d 221, a personal injury claim by a stevedore against the owner of a vessel claimed to be unseaworthy, the principal factual issue was whether the stevedore was caused to slip and fall through a hatch from one deck to another because there was grease on the upper deck. Witnesses were sequestered. At the close of the first day of testimony, during which the plaintiff and his key supporting witness had testified, defense counsel conferred with the defense witnesses and disclosed to them the testimony of the plaintiff and his witness. This Court held that allowing the defense witnesses to testify was not an abuse of discretion. A signed statement taken from the plaintiff's witness and the pretrial deposition of the plaintiff had revealed the substance of the expected testimony from both. We said that "[i]t, therefore, is very improbable that the defendant's witnesses could have been told of anything substantial and new on the basis of the testimony given in court by [the plaintiff's witness] and the plaintiff, and the record does not support any opposite conclusion." *Id.* at

445–46, 112 A.2d at 225–26. We also said that defense counsel's failure to seek authorization from the trial court to confer with the defense witnesses "appears to have been due to inattention or inadvertence and not to any deliberate intent to circumvent the rule." *Id.* at 444, 112 A.2d at 225.

Also illustrative is *Nickerson v. State,* 22 Md.App. 660, 325 A.2d 149, *cert. denied,* 273 Md. 722 (1974). The defendant, after unsuccessfully asserting self-defense, was convicted of assault with intent to murder. The victim had driven his pickup truck to the home of the defendant's paramour in order " 'to get things straight immediately' concerning [the defendant's] relationship with [the victim's] wife." *Id.* at 662, 325 A.2d at 151. The defendant fired a number of shots from the second floor window of the home into the pickup truck, wounding the victim. In the State's case-in-chief, a sheriff testified to the content of the defendant's telephone conversation with the sheriff, reporting the shooting. Thereafter, the sheriff remained in the courtroom. The paramour testified to the same conversation, but she added that the defendant had expressed fear that the victim was trying to trap the defendant into coming outside of the building. In the State's rebuttal case, the sheriff was recalled, and he denied that the defendant had expressed fear of a trap. The Court of Special Appeals found no error in allowing the sheriff's rebuttal. That court said: "We fail, in any event, to see how the sheriff was schooled, taught or prompted on the subject of [the paramour's] testimony by anything he heard in court." *Id.* at 669, 325 A.2d at 155.

The foregoing cases may be contrasted with cases in which the defense was alibi and where the offending witness listened to the testimony of the defendant or of an alibi witness. *See, e.g., McKnight v. State,* 33 Md.App. at 293, 364 A.2d at 123; *Hill v. State,* 9 Md.App. 65, 68–69, 262 A.2d 573, 574–75 (1970); *see also Pierce v. State,* 34 Md.App. 654, 664, 369 A.2d 140, 146 (in appeal of codefendant Jackson, court allowed exclusion of defense witness, stating that "[s]uch edification is precisely that which sequestration was intended to guard against." For factual development of defendant's mistaken identity defense

see Brief of Appellee at 2–5, *Jackson v. State,* No. 76–405 (Md.Ct.Spec.App.).), *cert. denied sub nom. Jackson v. State,* 280 Md. 732 (1977).

█ In addition to *Frazier v. Waterman Steamship Corp., supra,* the importance of whether the infraction is deliberate is also illustrated by *Mayson v. State,* 238 Md. 283, 208 A.2d 599. In that prosecution for manslaughter arising out of domestic violence, the wife and the daughter of the allegedly offending witness were prosecution witnesses. He had been summoned to testify for the defense, but was not called, and the State called him in rebuttal. Without setting forth the testimony, this Court held that the allegedly offending witness was properly permitted to testify, despite his having been in constant contact with his wife and daughter during the trial, because "[t]here was no showing that the court ordered him to stay away from his wife and daughter during the trial[, a]nd there is no showing, or any attempt to show, that he did anything wrong, or that he deliberately violated the court's order." *Id.* at 290, 208 A.2d at 603.

█ Further, where, as here, the trial court excludes a witness called by the accused in a criminal case, another important factor comes into play that is not present where the asserted error is exclusion of a witness called by the State in a criminal prosecution, or of a witness in a civil action. The right of criminal defendants to call witnesses on their behalf is protected by the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment:

> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a

defense. This right is a fundamental element of due process of law."

*Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023 (1967); *see also Webb v. Texas*, 409 U.S. 95, 98, 93 S.Ct. 351, 353, 34 L.Ed.2d 330, 333 (1972); *McCray v. State*, 305 Md. 126, 133, 501 A.2d 856, 860 (1985). The right, however, is not absolute. *See Taylor v. Illinois*, 484 U.S. 400, 410–14, 108 S.Ct. 646, 654–55, 98 L.Ed.2d 798, 811–13 (1988) (Compulsory Process Clause of Sixth Amendment does not create an absolute bar to preclusion of testimony of defense witness as sanction for violating discovery rule); *United States v. Nobles*, 422 U.S. 225, 241, 95 S.Ct. 2160, 2171, 45 L.Ed.2d 141, 155 (1975) ("Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system"). Thus, where the appropriateness of excluding an accused's witness is a relatively close call, the trial court should avoid possible infringement of constitutional rights by permitting the offending defense witness to testify.

Applying the foregoing principles to the facts of the instant matter, we hold that the circuit court abused its discretion in excluding the proffered witness. To the extent that the ruling was based on a sequestration violation, and not on the voucher rule, the circuit court seems to have come very close to applying a rule of *per se* exclusion. There was no inquiry concerning who the witness was, or how she had obtained the information. Nor did the court seem to consider whether the testimony heard by the witness was of any significance to her testimony. In ruling to exclude, the court seems to have relied on defense counsel's knowledge of the sequestration order, the witness's presence in the courtroom during Stokes's two plus page examination in the defense case, a knowledge of that presence imputed to defense counsel, and defense counsel's knowledge that the witness would or might be called.

In our view of this record the degree of deliberateness, if any, on defense counsel's part in violating the sequestration

order is *de minimis*. Defense counsel did not learn of the possibility of impeaching Stokes for bias until the State had closed its case. Defense counsel had announced an intention to call Stokes, but the apparently intended subject of that examination was the absence of any lineup identification of Redditt by Stokes. Only the single question about Stokes's alleged statement to the impeaching witness addressed the subject about which the impeaching witness was to be examined. But that single question appears to have been put to Stokes for a purpose other than educating the impeaching witness.

The evidentiary scenario presented here falls in a gray area between impeachment by prior inconsistent statement and impeachment by proof of improper motive or bias. The thrust of Redditt's proffer was to show, through a witness who purportedly heard Stokes's expression of her state of mind, that Stokes sought retribution against someone for the assault on her without regard to the accuracy of the identification of her assailant. One possible analysis is to view that proof as bearing directly upon the credibility of Stokes, and as non-collateral, so that no foundation need be laid through examination of the witness to be impeached before admitting the proof of bias. In *Pettie v. State*, 316 Md. 509, 513–18, 560 A.2d 577, 579–81 (1989), where the impeaching statement was a threat made to the witness by a third party, we held that extrinsic evidence of the statement was directly admissible, and no foundation was necessary. *Cf.* Maryland Rules of Evidence, Rule 5–616(b)(3) ("Extrinsic evidence of bias, prejudice, interest, or other motive to testify falsely may be admitted whether or not the witness has been examined about the impeaching fact and has failed to admit it.").[4]

On the other hand, Professor McLain reads *Pettie* to mean that "if the impeaching fact is a prior statement by the witness ... the witness [must] be questioned about it before extrinsic

---

4. The Maryland Rules of Evidence were not in effect at the time of the trial in the instant matter.

evidence may be offered...." 6 L. McLain, *Maryland Evidence* § 607.2, at 12–13 & n. 16.1 (1994 Supp.).

Whether Maryland evidence law requires a foundation under the circumstances presented here is a question that has not been briefed, and it is one which we need not answer in this case. On the issue of a deliberate violation of the order sequestering witnesses, the strong inference from this record is that, in putting to Stokes the single question about her alleged prior statement, defense counsel was not focusing on the rule on witnesses, but was primarily concerned with meeting an applicable, or possibly applicable, foundational requirement.

In any event, any violation of the sequestration rule in this case, when measured by the purpose of the rule, is wholly insubstantial and technical. The offending witness obviously had revealed the substance of her testimony to defense counsel at the recess. Defense counsel had revealed to the court and to Stokes the substance of the impeaching witness's testimony when it was embodied in the question put to Stokes. Stokes's answer was a flat denial, without elaboration. If the impeaching witness had been allowed to testify, it is difficult to discern what aid in testifying the witness would have received from Stokes's flat denial. On the other hand, if Stokes, after realizing who the unidentified, impeaching witness was, and what conversation the witness had in mind, had answered the question by placing an innocent interpretation on the conversation, perhaps a substantially different question might be presented than that which is now before us. But, as this scenario actually unfolded, the impeaching witness was not aided or schooled by Stokes's testimony. Conversely, the State would not have been prejudiced, through any improper advantage to the defense gained by a sequestration violation, had the witness been permitted to testify.

Because the circuit court either applied an erroneous legal standard, or because, under the correct legal standard, the facts do not warrant the sanction imposed, the circuit court abused its discretion in excluding the impeaching evidence.

## II

The State argues that any error in excluding the impeachment testimony was harmless beyond a reasonable doubt. See *Dorsey v. State*, 278 Md. 221, 362 A.2d 642 (1976). The contention is that the other evidence in the case so overwhelmingly demonstrated Redditt's guilt that we can be assured that the jury would not have been influenced by the impeaching testimony. In considering this argument, we must assume that the jury would have accepted the impeaching testimony as true, if the jury had heard it.

The State points out that Redditt was identified in court by Matthews, as well as by Stokes, that he was arrested in the car used in the robbery on the previous night, and that he fled when arrested. Nevertheless, the prosecutor in closing argument told the jury: "I think the key witness in the case, at least in my opinion, was Cheryl Stokes."

In the statement which Stokes signed at the time of identifying Redditt from a photographic array, she said that the photograph "looks a lot like him, but I believe his head was a little smaller." On direct examination at trial Stokes explained that the gunman wore a hat but no one in the photographic array was wearing a hat. When asked whether wearing a hat had altered the gunman's appearance, Stokes responded:

"No, it just made his head—well, with the hat, it made his head look smaller to me. So looking at the photos, I was looking really for a skinny head, but I remember the nose and the eyes. That's basically what helped me pick out the photo."

Later, in the cross-examination, Stokes acknowledged that she did not include in the written statement that accompanied her photographic identification anything about the defendant's wearing a hat. She said, "Right, not at the time. But *without* the hat his head does look smaller." (Emphasis added).

When examined concerning her reaction to the request by Officer Conaboy that Stokes view a lineup, the testimony set forth below was elicited:

"Q. Did you tell him that you thought too long a period of time had passed?

"A. Yes, but I also—

"Q. And what did you mean by that?

"A. That I didn't—I didn't want to go and look at a lineup and pick the wrong person. But I told him that I would look at the lineup if he really needed me to and he said he may not.

"Q. Okay. Did you tell him you would definitely be able to make a positive identification—

"A. Yes.

"Q. —if you saw the lineup?

"A. No.

"Q. You did not say that?

"A. No. I told him that I could make a definite—a definite identification if I saw him in person. My exact words were that, 'If I saw him coming down the street with seven, eight guys, I could tell you which one he was.' "

The jury in this case may have wondered why Stokes was concerned about identifying the wrong man in a lineup, and the jury may have wondered why viewing a lineup that included Redditt would not qualify as seeing Redditt "in person." We cannot say beyond a reasonable doubt that the jury would still have convicted even if the evidence impeaching Stokes for bias had been admitted.

The quotation from *United States v. Harvey*, 547 F.2d 720, 723 (2d Cir.1976), that we set forth in *Pettie v. State,* is appropriate here.

" 'Although the scope of a defendant's right to introduce evidence of bias is not limitless, and may be restricted as the trial court in its sound discretion deems proper, *it is rarely proper to cut off completely a probative inquiry that bears on a feasible defense. "(A) defendant should be afforded the opportunity to present facts which, if believed, could lead to the conclusion that a witness who has testified against him either favored the prosecution or was hostile to*

*the defendant.* Evidence of all facts and circumstances which 'tend to show that a witness may shade his testimony for the purpose of helping to establish one side of a cause only,' should be received...." ' "

316 Md. at 515, 560 A.2d at 580.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF AN ORDER REVERSING THE JUDGMENT OF CONVICTION OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMANDING THIS CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY, MARYLAND.*