733 A.2d 1106

Kevin REED

v.

**BALTIMORE LIFE INSURANCE COMPANY, et al.**

No. 1390, Sept. Term, 1998.

Court of Special Appeals of Maryland.

July 6, 1999.

Reconsideration Denied Aug. 24, 1999.

538

John Hermina (George W. Hermina and the Hermina Law Group, on the brief), Laurel, for Appellant.

Philip B. Barnes (Leora R. Simantov, Whiteford, Taylor & Preston, L.L.P., Towson, Barrett W. Freedlander, David W. Erb and Saul, Ewing, Weinberg & Green, L.L.C., Baltimore, on brief), for Appellees.

Argued before DAVIS, THEODORE G. BLOOM, (retired, specially assigned) and JOHN J. BISHOP, Jr., (retired, specially assigned), JJ.

DAVIS, Judge.

The events giving rise to this appeal began when appellant Kevin Reed brought suit in the Circuit Court for Montgomery County against his former employer, Baltimore Life Insurance Company (BLIC), appellee.[1] Appellant's complaint included allegations of defamation, intentional infliction of emotional distress, and tortious interference with business relations. BLIC filed a counterclaim against appellant for breach of contract, breach of fiduciary duty, and fraud. Unfortunately, before we are able to address the essence of this appeal, we

---

1. David Griffin, a manager of client relations at BLIC, also is an appellee in the current appeal, although his role in the appeal is collateral.

must sort out the myriad of procedure and discovery disputes raised by the parties.

Prior to trial, appellees filed a motion for sanctions against appellant's counsel, alleging that interrogatories and document requests were not timely answered. Appellant's counsel opposed the motion and filed a cross-motion for sanctions, arguing that he declined to provide discovery because BLIC failed to answer its "first" set of interrogatories.[2] In an attempt to keep the proceedings from stalling, the court did not sanction either party but found that appellant did not respond to appellees' discovery requests while appellees had responded timely.

From June 22 to June 26, 1998, the court (Kavanaugh, J.) conducted a five-day jury trial. At the close of appellant's evidence, the court granted judgment to Griffin on all claims against him and to BLIC on the claim of intentional infliction of emotional distress. The remaining claims were submitted to the jury, which found in favor of BLIC on the defamation and interference with business relations charges. With respect to the counterclaims, the jury concluded that appellant committed fraud against BLIC, awarding it $2,298 in economic damages. Furthermore, the jury awarded BLIC $2,400 in noneconomic damages as a result of its determination that appellant breached his fiduciary and contractual duties to BLIC.

The court entered final judgment on July 2, 1998. Appellees filed a supplemental motion for sanctions against appellant's counsel on July 10, 1998, renewing their claims of discovery violations. In addition, appellees requested sanctions for the alleged bad faith of appellant in continually asserting that BLIC did not provide discovery, pursuing un-

---

**2.** According to appellant's counsel, he served BLIC with two sets of interrogatories, the second of which was answered. Appellant's counsel, however, did not include a certificate of service with the first set until approximately one year after he alleges they were served. Thus, in the face of denial of receipt by BLIC's counsel, the court decided that the first set of interrogatories was not served upon BLIC.

substantiated claims against Griffin, and pursuing the intentional infliction of emotional distress claim against BLIC. Appellees sought costs and attorney fees related to the preparation of pleadings with respect to the aforementioned allegations. Appellant filed a response to the motion on July 24, 1998, and the court later set January 20, 1999, as the date for a hearing on the motion.[3]

Meanwhile, on the same day appellant responded to appellees' motion for sanctions, he timely filed a notice of appeal. On December 16, 1998, however, this Court dismissed the appeal because the record did not include a trial transcript. When thirty days passed, we issued a mandate on January 15, 1999, disposing of the action. Four days later, appellant filed a motion for reconsideration. In a February 16, 1999 order, we granted the motion, recalling our previous mandate, reinstating the appeal without prejudice, and instructing appellant to file his brief by March 31, 1999.

On March 5, 1999, appellant ordered from the Montgomery County Technical Services Office the trial transcript, which was ready for pick-up on the afternoon of Friday, March 12, 1999. Appellant sent a messenger to obtain the transcript, but claims that the messenger was unable to return until after business hours. As a result, appellant did not receive the transcript until Monday, March 15, 1999. On Wednesday, March 17, 1999, appellant sent the transcript for copying, which required three days. Appellant picked up the transcript on Tuesday, March 23, 1999, and was ready to deliver it, along with the proposed record extract, on Wednesday, March 24, 1999, when it was discovered that pages were missing from the copies. The subsequent reorganization of the transcripts consumed more than two additional days. Because the transcripts and extract were not in final form until the evening of

---

3. During the January 20, 1999 hearing, the court heard argument on the interrogatories dispute and BLIC's motion for contempt. According to appellant's counsel, appellees' supplemental motion for sanctions should not have been considered because the earlier motions for sanctions had been withdrawn. The court withheld a decision pending the outcome of this appeal.

Friday, March 26, 1999, they were not able to be sent to BLIC until Monday, March 29, 1999. Although appellant claims that the transcripts and extract were mailed, the accompanying letter signed by appellant's counsel refers only to the extract.

Appellant, meanwhile, filed a motion to extend the time for filing his brief. This Court granted the motion and ordered the filing of the brief by April 5, 1999. Pursuant to the order, on April 5, 1999, appellant filed his brief, presenting for our review five questions, which we restate as follows:

I. Did the trial court err by denying appellant's motion for recusal?

II. Did the trial court err by denying appellant's motion to disqualify one of appellees' attorneys?

III. Did the trial court err by denying appellant's motion for a mistrial?

IV. Did the trial court err by allowing a witness to testify in violation of the sequestration rule?

V. Did the trial court err by submitting the fraud count from appellees' counterclaim to the jury?

On April 8, 1999, presumably upon receiving appellant's brief, appellees complained to the Clerk of this Court that they had not yet received a trial transcript from appellant. Also on that day, appellant filed a motion to supplement the record with the trial transcript, because the record filed following the original notice of appeal did not contain the trial transcripts. On April 9, 1999, appellees received the transcript and filed a motion to dismiss the appeal, asserting that appellant's failure to adhere to appellate filing procedures had prejudiced them.[4] We denied appellees' April 9, 1999 motion to dismiss the appeal and granted appellant's motion to supplement the record. On May 5, 1999, appellees filed their

---

4. Not surprisingly, additional motions were also filed. Appellees filed a motion to shorten the time to three days for appellant to respond to the motion to dismiss the appeal. Appellant filed his opposition to the motion to dismiss before this Court ruled on the motion to shorten time. Appellees then filed their reply memorandum supporting the earlier motion to dismiss.

brief, which included essentially a restatement of their earlier motion to dismiss the appeal.

For the reasons set forth herein we affirm the circuit court's judgment.

## FACTS

From March 1995 to July 6, 1996, BLIC employed appellant as a life insurance sales agent in the company's Baltimore district office. BLIC issues principally three types of policies: term insurance, whole life, and universal life. Early in 1996, BLIC learned that many of the universal life policies, which provide a flexible combination of term insurance and savings, were lapsing, causing customers to lose their coverage. As a pro-active attempt to solve the problems, BLIC initiated, in May 1996, a program to survey its customers. After initiating the program, BLIC learned that approximately thirty percent of the universal life policies written by the company's Baltimore district office contained abnormal sales problems. Consequently, BLIC conducted a more detailed investigation led by Tom Stallings, a quality service officer.

The investigation discovered two forgeries in paperwork submitted by appellant. In addition, a policyholder complained to the company about the manner in which appellant had handled his account. After Stallings met with Damian Salve, regional vice president and superior to the Baltimore district manager, and Gary Ray, vice president of sales, they determined that there was sufficient proof of violations to justify terminating appellant's employment. They subsequently consulted with Mark Ewing, senior vice president of administration, who authorized the dismissal. As a result, appellant was dismissed on July 5, 1996.

After further investigation of its Baltimore office, BLIC learned of numerous misrepresentations, forgeries, and fraudulent practices involving accounts serviced by appellant. Appellee Griffin worked under Stallings during the investigation and testified at trial that appellant engaged in improper practices by increasing the face value of universal life policies while informing clients that the premium would not need to be

increased. Thus, the cash value of the policy would be depleted until no cash was left, causing the policy to lapse and end the client's coverage. Second, appellant encouraged policyholders who were "riders" on another's insurance policy to convert the coverage into their own policies. Appellant then would withdraw money from the primary holder's policy because the additional premium was no longer necessary. As a result of these sales practices, appellant earned additional commissions and bonuses from BLIC.

On May 1, 1997, appellant filed suit in the circuit court, bringing the aforementioned claims against BLIC. The discovery disputes, trial, and this appeal ensued.

## MOTION TO DISMISS

■ Before turning to the merits of appellant's appeal, we shall address appellees' motion to dismiss the appeal. In support of their motion, appellees assert that their ability to prepare a brief was prejudiced by appellant's failure to provide them with a copy of the trial transcript until April 9, 1999.[5] While we do not condone appellant's tardiness in ordering the transcript nearly three weeks after the appeal was reinstated, we fail to perceive the prejudice asserted by appellees. Appellees obtained the trial transcripts on April 9, 1999, the day after they received appellant's brief. Appellant's brief and record extract were filed in the Clerk's Office of this Court on April 15, 1999 and the transcript was received on May 21, 1999. Pursuant to Maryland Rule 8–502, appellees had within thirty days after April 5, 1999, when appellant's brief was filed, to file their own brief. Appellees, therefore,

---

5. According to appellant, the statement of BLIC's counsel during the January 20, 1999 hearing on sanctions that he would "provide [the court] with a transcript of the hearing," demonstrates that appellees were in possession of the trial transcripts prior to the appeal being reinstated. Thus, submits appellant, his delay in sending the trial transcripts to appellees was not prejudicial. It appears that BLIC's counsel was referring to a small portion of the trial transcript that he had requested. In any event, appellant would not have been relieved of his duty to provide appellees with the transcripts. *See generally Terrell v. State*, 34 Md.App. 418, 367 A.2d 95 (1977).

were not prejudiced because they still had twenty-seven days to file a brief once they finally received the trial transcripts.

Appellees also contend that appellant's appeal should be dismissed because he failed to comply with Rule 8–501 regarding the filing of a record extract. According to appellees, appellant failed both to include a large portion of relevant material from the record and to consult with counsel in determining the contents of the extract. Again, although we do not condone appellant's procedural violations, prejudice to appellees is absent. Initially, we observe that portions of the transcripts omitted by appellant have been included in appellees' appendix, pursuant to Rule 8–501(e). Furthermore, although appellant did not consult with appellees regarding the contents of the proposed record extract until March 29, 1999, appellees were able to submit a complete appendix.

Our conclusion that the appeal should not be dismissed is bolstered by Maryland Rule 8–501(m) (1999), which provides that, "[o]rdinarily, an appeal will not be dismissed for failure to file a record extract in compliance with this Rule." Under the same subsection, this Court is given the authority to direct appellant to file a proper record extract. Such an exercise would be a waste of time and resources now that both parties have filed the transcript portions that they believe support their arguments. Although we deny the motion to dismiss because of the absence of prejudice, we shall assess the costs associated with the creation of appellees' appendix to appellant, which assessment is not based on which party ultimately prevails in this appeal. *See Standard Am. Homes, Inc. v. Pasadena Bldg. Co.*, 218 Md. 619, 623, 147 A.2d 729 (1959).

Before turning to the first issue presented, we would be remiss if we did not pause, at this juncture, and comment upon the manner in which counsel have failed to cooperate in preparing and submitting the required record extract and briefs in this Court. Unfortunately, the acrimony which characterized the interaction of counsel during the discovery proceedings and at trial has persisted on appeal. As chronicled, *supra*, although we in no way seek to dissuade counsel from employing all legal procedures available, appellees sought to

have appeal dismissed and shorten time to three days for appellant to respond. Appellees had complained to the Clerk of this Court that, on April 8, 1999, when they received appellant's brief, they had not yet received a trial transcript from appellant. Notwithstanding receipt of the transcript the following day, appellees insisted that dismissal was warranted because they had been prejudiced by appellant's failure to adhere to appellate procedures. Although appellees' counsel quite properly cites the violations of appellate procedures by appellant's counsel, the procedural violations are a by-product of the personal animus between counsel, resulting in a refusal on the part of both attorneys to communicate with each other regarding what is relevant and necessary to include in the record extract to permit us to review properly the issues presented in this appeal. Maryland Rule 8–501(d),(e), and (f) provides:

(d) *Designation by parties.* Whenever possible, the parties shall agree on the parts of the record to be included in the record extract. In agreeing on or designating parts of the record for inclusion in the record extract, the parties shall have regard for the fact that the entire record is always available to the appellate court for reference and examination and shall not engage in unnecessary designation. If the parties are unable to agree:

(1) Within 15 days after the filing of the record in the appellate court, the appellant shall serve on the appellee a statement of those parts of the record that the appellant proposes to include in the record extract.

(2) Within ten days thereafter, the appellee shall serve on the appellant a statement of any additional parts of the record that the appellee desires to be included in the record extract.

(3) Within five days thereafter, the appellant shall serve on the appellee a statement of any additional parts of the record that the appellant proposes to include in view of the parts of the record designated by the appellee.

(4) If the appellant determines that a part of the record designated by the appellee is not material to the questions

presented, the appellant may demand from appellee advance payment of the estimated cost of reproducing that part. Unless the appellee pays for or secures that cost within five days after receiving the appellant's demand, the appellant may omit that part from the record extract but shall state in the record extract the reason for the omission.

(e) *Appendix in appellee's brief.* If the record extract does not contain a part of the record that the appellee believes is material, the appellee may reproduce that part of the record as an appendix to the appellee's brief together with a statement of the reasons for the additional part. The cost of producing the appendix may be withheld or divided under section (b) of Rule 8–607.

(f) *Appendix in appellant's reply brief.* The appellant may include as an appendix to a reply brief any additional part of the record that the appellant believes is material in view of the appellee's brief or appendix. The appendix to the appellant's reply brief shall be prefaced by a statement of the reasons for the additional part. The cost of producing the appendix may be withheld or divided under section (b) of Rule 8–607.

As we noted, *supra,* appellees complain that appellant failed to discuss what should be included in the record extract and then failed to include large portions of relevant material from the record extract. Although the discovery rules (Rules 2–432 and 2–433), the rule proscribing proceeding in bad faith (Rule 1–341), and the Rules of Professional Conduct (Rule 3.4) require compliance with a code of conduct as to specific kinds of obstructive actions, no rule specifically requires collegiality and simple civility. We believe adherence to such fundamental precepts would have obviated the need to litigate many of the issues collateral to the merits of the underlying cause of action.

## DISCUSSION

### I

Appellant first argues that the trial judge erred by denying his motion for recusal. Appellant, citing numerous alleged

instances of judicial bias during the trial, contends the judge was biased against him and expressly favored appellees' counsel. The proceedings in the case *sub judice,* when viewed in their entirety, lead us to a stark conclusion, *viz:* although appellant presents, for our review, a pentad of reasons why he believes the judgments of the circuit court should be reversed, virtually all, in one way or another, are advanced under the umbrella thesis that the court's decisions were colored by partiality to opposing counsel. We recognize appellant's unconditional right to present to us his challenges to the conduct of the lower court proceedings. Stripped of the assertion that the lower court was not impartial, however, the underlying claims of error which go to the merits of appellant's lawsuit are almost inconsequential in relation to the complaint lodged at trial and on appeal against the conduct of the trial by the judge.

■ We believe it to be critical to make clear, as we observed in *Braxton v. Faber,* 91 Md.App. 391, 405 n. 6, 604 A.2d 543 (1992), "[O]n this appeal, assuming the sufficiency of the record, our inquiry is limited to what impact, if any, the trial judge's alleged conduct had on the appellant's ability to obtain a fair trial. We are not here otherwise concerned with adjudication of judicial misconduct." Our point, in *Braxton,* was that our review was confined to whether the record persuaded us that the appellant there was denied the right to a fair trial by the judge's conduct of that trial and any adjudication as to judicial misbehavior would be reserved for another day in another forum, where the trial court could fully expostulate its position. *Braxton* involved allegations of judicial bias in which the trial court was alleged to have harbored racial animus against plaintiff's counsel and where, as in the instant case, appellant suggested that the trial judge made facial expressions, gestures, and body language that could be construed as impatience or intolerance directed at Braxton's counsel. Significantly, in *Braxton,* there was no motion for recusal, and the appellant in that case expressly declined on several occasions to accept the lower court's invitation to move for a mistrial. Appellant's counsel had stated to the court,

... it was my observation that from time to time you did roll your eyes and look at the ceiling and moan and groan, and rushed us along with respect to the time, and, Your Honor, even if you were to look through the transcript, I do not believe that defense counsel has been rushed along or anything like that, I do not believe that defense counsel has been given a hard time, and I just want the record to reflect that. *I am not accusing you of any bias per se.*

*Braxton,* 91 Md.App. at 401–02, 604 A.2d 543. In response to the court's query, "Are you asking for a mistrial or what are you trying to do—," counsel responded that she did not want a mistrial, but was "merely trying to represent" her client. *Id.* at 402, 604 A.2d 543. We held that that was insufficient to require the trial judge to take some action to remedy the partiality alleged by counsel.

In *Surratt v. Prince George's County,* 320 Md. 439, 578 A.2d 745 (1990), the Court of Appeals, unlike the circumstances in *Braxton,* was required to decide whether a recusal motion should have been granted. Judge William H. Adkins, speaking for the Court, observed that a recusal motion, to avoid the possible withholding of the motion as a weapon to use only in the event of an unfavorable ruling, should be filed as soon as the basis for it becomes known. The Court then concluded that all of the prerequisites for raising the issue of recusal had been met in *Surratt* because the allegations had been stated on the record by a lawyer competent to testify about the facts in the presence of opposing counsel and the trial judge who was the subject of the charges. *Id.* at 468, 578 A.2d 745.

Although we are satisfied that appellant, in the case at hand, has done all that is necessary to raise the issue of recusal, we do not believe the facts of this case remotely implicate a legitimate question of judicial bias. Counsel frames the first issue as one of judicial bias; however, a review of the proceedings discloses that this is more a case about the conduct of the lawyers involved. On innumerable occasions we have spoken of the trial court's prerogative to assess the credibility of the witnesses; however, in the present appeal, the trial court had to be more concerned about the

credibility of the attorneys involved than any witnesses called to testify.[6]

In addition to being called upon to determine the credibility of the attorneys, the trial judge found herself accused of personally testifying because she had indicated that she saw appellees' counsel deliver certain documents, of being biased because of adverse rulings, of considering matters outside of the record in noting that another case against appellees had been dismissed because counsel had not appeared, and of threatening to refer appellant's counsel to the Attorney Grievance Commission because of his conduct in the instant trial.

■ Although a *per se* rule precluding a litigant from relying on evidentiary rulings as a basis for a claim of judicial bias would have a chilling effect, we believe that, at least in this case, appellant's accusations of judicial bias are analogous to participating in an athletic contest "under protest" or filing a formal complaint against the umpire because one is unhappy with what the umpire perceives to be the appropriate ball or strike call or against a referee because of an adverse foul call. Unless there is palpable and demonstrable indicia of judicial bias, evidentiary calls and actions taken by the trial judge in the conduct of a trial are more appropriately reviewed in the context of whether the judge's rulings comport with applicable law, rather than by divining a motive speculatively attributed to the trial judge by counsel. It is settled law that a motion for recusal may not ordinarily be predicated upon the judge's rulings in the case at hand or a related case. *Boyd v. State,* 321 Md. 69, 581 A.2d 1 (1990), citing *United States v. Partin,* 601 F.2d 1000, 1011 (9th Cir.1979), *cert. denied,* 446 U.S. 964, 100 S.Ct. 2939, 64 L.Ed.2d 822 (1980).

■ Lest there be any doubt that we favor—indeed believe an adversary system demands no less—zealous advocacy, we reiterate unequivocally that it is an advocate's duty to use

---

6. Rule 3.3(a)(1) of the Maryland Rules of Professional Conduct provides: "A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal...."

legal procedure for the fullest benefit of the client's cause, but it is also a duty not to abuse legal procedure. *See* Maryland Rules of Professional Conduct, Comment to Rule 3.1. As we observed in *Tibbs v. State,* 72 Md.App. 239, 260, 528 A.2d 510 (1987):

> More recently in *Little v. Duncan,* 14 Md.App. 8, 284 A.2d 641 (1971), we said: "Zeal in advocacy is commendable, but zeal, even in advocacy, without bounds may be contemptuous and disruptive."

> . . .

We recognize that a trial is not an afternoon tea or other polite social event. On the other hand, it is not trial by combat. The courts, over the years, have laid out carefully delineated boundaries in which the adversaries are free to fight. Contests are, however, confined to the area within the boundaries and governed by specific rules. It is counsel's duty to abide by the rules and remain within the boundaries.

Thus, we do not suggest, in any sense, that counsel's representation should be characterized by timidity or lack of assertiveness.

 Turning to the specific contentions raised by appellant, when bias, prejudice, or impartiality is alleged, a judge's decision regarding recusal will not be overturned absent a showing of abuse of discretion. *See Surratt,* 320 Md. at 465, 578 A.2d 745. The Court of Appeals, in delineating who shoulders the burden of proof, declared:

> With respect to a claim of actual prejudice made under these circumstances, it has been said that "[a] judge is presumed to be impartial," *United States v. Sidener,* 876 F.2d 1334, 1336 (7th Cir.1989); that "[a] judge is presumed not to confuse the evidence in one case with that in another," *Dove v. Peyton,* 343 F.2d 210, 214 (4th Cir.1965); and, that "judges are men [and women] of discernment, learned and experienced in the law and capable of evaluating the materiality of evidence," *State v. Babb,* 258 Md. 547, 550,

267 A.2d 190 (1970). As Blackstone put it, "the law will not suppose a possibility of bias or favour in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea." 3 W. Blackstone, *Commentaries of Laws of England* 361 (1st ed. 1769). *Thus, where an allegation of actual bias or prejudice is made, the burden is upon the [party alleging bias] to make that showing from the record. Carey v. State,* [ ] 43 Md.App. [246,] [ ] 248–49, 405 A.2d [293,] [ ] 296 [(1979); *cert. denied,* 445 U.S. 967, 100 S.Ct. 1660, 64 L.Ed.2d 244 (1980) ].

*Boyd,* 321 Md. at 80–81, 581 A.2d 1 (emphasis added). The standard in reviewing such a claim is objective: "whether a reasonable member of the public knowing all the circumstances would be led to the conclusion that the judge's impartiality might reasonably be questioned." *Surratt,* 320 Md. at 465, 578 A.2d 745.

■ In order to obtain review of the trial judge's conduct, the record must contain the following elements:

(1) facts are set forth in reasonable detail sufficient to show the purported bias of the trial judge; (2) the facts in support of the claim must be made in the presence of opposing counsel and the judge who is the subject of the charges; (3) counsel must not be ambivalent in setting forth his or her position regarding the charges; and (4) the relief sought must be stated with particularity and clarity.

*Braxton,* 91 Md.App. at 408–09, 604 A.2d 543. Absent each of these elements, we will not review a party's assertion of prejudice.

■ In the case *sub judice,* the detail and specificity of two of the allegations of bias are insufficient to establish the requisite elements. First is the assertion that the judge's expressions plainly demonstrated her disfavor of appellant's counsel to the jury. We have opined that "trial judges, even when under the severe time constraints occasioned by overcrowded dockets, should take great pains to avoid facial expressions, gestures, and body language which could be

construed as impatience or intolerance directed to either side."
*Braxton,* 91 Md.App. at 405 n. 6, 604 A.2d 543. Such expressions should be avoided because even unintended manifestations of bias could improperly influence a jury. *See id.* In the instant case, however, we are unable to discern from the record the alleged expressions made by the trial judge. Appellant merely refers to his motion for recusal as evidence of the judge's improper body language. In the absence of specific references or proof offered on the record before the court and appellees' counsel, such bald allegations of bias are insufficient to support review.

Furthermore, the record is insufficient to establish that the judge prevented counsel from probing areas into which appellees' counsel was allowed to inquire. Again, appellant's counsel presents this allegation without citation to the record where this contention was raised or proof that the partiality was displayed. Counsel refers us to his motion for recusal, which merely sets forth the allegation of prejudice without identifying facts demonstrating the trial judge's refusal to allow equal inquiries from both parties. Absent specific facts from the record, this contention is not sufficient for review.

Regarding the additional allegations of bias, we need not embark upon an analysis of the factors because appellant's counsel clearly set forth his position in the presence of the judge and appellees' counsel, both on the record and through the pleadings. Furthermore, unlike the aforementioned assertions, appellant's counsel presents us with sufficient facts to show the alleged bias for us to review the contention of bias. Hence, we shall examine the issues raised by appellant's counsel to determine whether a reasonable member of the community reasonably would have questioned the judge's impartiality given the circumstances.[7]

---

7. The appearance of impropriety is a concern because the process must not only be fair, but also must appear to the public to be fair. *See Jefferson–El v. State,* 330 Md. 99, 107, 622 A.2d 737 (1993).

The Maryland Rules are instructive regarding recusal:

> C. RECUSAL. (1) A judge should not participate in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
>
> (a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . .

MD. RULE 16–813 (1999). We observe, however, that Maryland adheres to a strong presumption that a trial judge is impartial, thereby requiring a party requesting recusal to prove that the judge has a bias or prejudice derived from an extrajudicial—personal—source. *See Jefferson–El v. State,* 330 Md. 99, 107, 622 A.2d 737 (1993). Bald allegations and adverse rulings are not sufficient to overcome the presumption of impartiality. *See Fearnow v. Chesapeake & Potomac Telephone Co.,* 104 Md.App. 1, 55, 655 A.2d 1 (1995), *aff'd in part and rev'd in part on other grounds,* 342 Md. 363, 676 A.2d 65 (1996).

Appellant first alleges that the court threatened to report appellant's counsel to the Attorney Grievance Commission. Prior to and during trial, both parties claimed that the other had refused to provide discovery. The following exchange occurred on the first day of trial:

> [APPELLANT'S COUNSEL]: The only discovery that was served on them up until that time, Your Honor, was interrogatories. That is the only discovery they had. Twelve letters later, how ever many letters later, now they are coming in and saying, "We never got them." I submit, Your Honor, they wrote me recently and they said, "We got them, we will answer them, if you'll answer ours." The problem we have—
>
> THE COURT: Well, you are making a serious allegation. Now you are saying that an officer of the court has lied to me in court.

[APPELLANT'S COUNSEL]: Your Honor, I am telling you the truth. If it amounts to serious allegations, so be it.

THE COURT: Well, I am going to investigate this, and somebody is lying here.

[APPELLANT'S COUNSEL]: Yes.

THE COURT: And I am going to take it to bar counsel.

[APPELLEES' COUNSEL]: Sure.

THE COURT: All right, but we are going to investigate this.

The trial judge expressed her frustration with counsel for both parties for their inability to settle discovery disputes and as a result of her belief that one of the parties had made a false representation to the court. Such expression of frustration did not constitute bias against appellant's counsel, and the threat of taking the matter to bar counsel was directed at both parties, not only appellant's counsel.[8] Thus, appellant presents no more than bald allegations of bias based on the judge's comments regarding referring counsel for disciplinary action.

 The next day, after investigating the matter, the judge made a factual finding that appellant's counsel had not properly served interrogatories upon BLIC. Appellant's counsel submits that the judge made an improper credibility determination against him based on the judge's knowledge of a separate case having been dismissed because appellant neglected to appear for trial. The following transpired during the second day of trial:

[APPELLANT'S COUNSEL]: We have been prejudiced in our ability to present a case. We are prejudiced in our ability to proceed forward.

THE COURT: All right. What I am going to rule is—right now. I, for two days, have been listening to these

---

8. Similarly, the judge later stated, "And I will take appropriate steps, because we have attorneys calling each other liars. And one side or the other is lying. And I will get to the bottom of it, if I have to go to Attorney Grievance on this."

allegations—and during duty week, I also listened to some allegations of one counsel calling the others liars and the other side producing documents and saying, "We gave them."

I have looked through the file for some type of certificate of service showing that [appellant] did serve [BLIC] with interrogatories back in Ninety—May—when are you alleging you served them?

[APPELLANT'S COUNSEL]: I believe it is May 19, 1997.

THE COURT: '97. There is no certificate of service in the file showing that. What we do have is a certificate of service a year later stating that they were served. According to [BLIC's] attorney, they never received that first set of interrogatories.

*There is another lawsuit you were involved in with Baltimore Life Insurance Company, which apparently was dismissed because you did not show up for trial.* But, that case, there were interrogatories in that one.

. . .

[APPELLANT'S COUNSEL]: Is this in some part of a record—this—

THE COURT: I have examined the record. I am making a finding of fact for the record.

[APPELLANT'S COUNSEL]: But, Your Honor, is this information contained in the court record?

THE COURT: No. What I have found out is going through this correspondence *that you handed me in your own motion.*

██ The court, while examining the file, noted that another case against BLIC had been dismissed because appellant's counsel did not appear. The observation, however, was not a basis for the court's finding that appellant's counsel had not properly served interrogatories upon BLIC. Instead, the judge relied on her examination of the file, the omission of a certificate of service, and correspondence from appellant's counsel. Notwithstanding appellant's insistence that reversal

is mandated because "the [c]ourt's credibility determination [was] based in part upon such extra-judicial matters as [sic] whether appellant's counsel showed up for trial in another, totally unrelated case in another jurisdiction," the court had stated, in response to counsel's query as to whether the information was contained in the court record, that she learned of his failure to appear as a result of reading correspondence *he* had "handed [her] in [his] own motion." Appellant cannot now complain about the fact that information which he provided to the court was extra-judicial. *See Jensen v. State*, 127 Md.App. 103, 127, 732 A.2d 319 (1999) (where appellant introduced evidence that she failed to notify her insurer of the recovery of items reported stolen, appellant was not permitted to challenge admission of that evidence on appeal).

We have held that a trial judge can only take judicial notice of an original record from the circuit court wherein he or she presides. *Irby v. State*, 66 Md.App. 580, 587, 505 A.2d 552 (1986). Appellee, citing the case in question pending before us, *Alalfey, et al. v. Baltimore Life, et al.*, No. 1807, September Term, 1998, contends that the trial judge's knowledge of that case is not extra-judicial. Precluding incorporation of extra-judicial matters into a proceeding is necessitated by the inability to authenticate the record of the prior proceeding. Since the information was supplied by appellant's counsel and was contained in the pleadings, it was part of the instant case and was not extra-judicial. Moreover, appellant's counsel does not claim that he did appear or that the information was otherwise inaccurate. Thus, there is no question of authentication or verification. *See Temoney v. State*, 290 Md. 251, 259–60, 429 A.2d 1018 (1981). We therefore perceive no prejudice resulting from the trial judge's knowledge of the failure of appellant's counsel to appear in a related case.

The court further explained the decision at the beginning of the next day's proceeding:

THE COURT: I had to make a call, because you were calling the defense attorneys liars. They were saying that you were a liar. For the record, I had to make a

determination of whether or not I thought the evidence showed that documents had been presented to you. I did make a record of that yesterday, and I just want the record to be clear, but we will file this [motion for recusal]. Okay.

[APPELLANT'S COUNSEL]: We are asking the [c]ourt to consider it at this stage.

THE COURT: A Judge doesn't recuse himself or herself in the middle of trial. It just isn't an option. Okay.

The judge made a credibility determination within her discretion regarding the discovery dispute. We have observed that "[w]ide discretion as to the course of the trial is vested in the trial court, and the exercise thereof will not be reversed absent an abuse of discretion." *Braxton,* 91 Md.App. at 397, 604 A.2d 543 (citing *Thrifty Diversified, Inc. v. Searles,* 48 Md.App. 605, 615, 429 A.2d 270 (1981)). In order to proceed with trial, the judge needed to make a decision regarding the discovery dispute. Absent specific evidence indicating bias, appellant's counsel is unable to rebut the strong presumption that the court acted impartially.

 Appellant also contends that the judge demonstrated bias by adopting the representations of counsel for appellees as to whether Mark Lewis, a sequestered witness, was in the courtroom during the playing of videotapes of other witnesses' testimony. Toward the conclusion of the second day of trial, appellees' counsel informed the court that they would be calling Lewis as a witness the next morning.[9] Appellant's counsel immediately objected, requesting the court to exclude Lewis because he had been present in the courtroom that morning while testimony was being presented. After the parties gave a physical description of Lewis, the following exchange occurred:

THE COURT: He has been outside those doors.

---

9. At this point, it was nearly five o-clock in the afternoon and appellees' counsel had sent Lewis home because it did not appear that he would be permitted to testify until the next day.

THE CLERK: Right.

[APPELLANT'S COUNSEL]: Your Honor—

THE COURT: I have been watching him pacing up and down.

THE CLERK: Right.

. . .

THE CLERK: He was in here first thing this morning. And when the jury came, he left.

. . .

THE COURT: [He was] pacing up and down the doorway. My clerk and I commented about it.

Despite the court's belief that Lewis had been outside during the morning session, the judge held an evidentiary hearing the next morning to determine whether a violation had occurred.

The evidentiary hearing involved observations by both parties' counsel and the calling of two witnesses—Lewis and a law clerk employed by appellant's counsel. Appellees' counsel asserted that they had instructed Lewis not to enter the courtroom while other witnesses were testifying and that he had only been in the room prior to such testimony. On the other hand, appellant's counsel, appellant, and the law clerk each testified they observed Lewis in the courtroom throughout much of the morning. During the evidentiary hearing, Lewis testified that, pursuant to instructions given by appellees' counsel, he was not in the courtroom when any of the videotapes were played. After receiving the conflicting versions of events, the trial judge observed:

Obviously, we have had testimony from four people that he was here. He himself has denied it. We have had testimony under oath from other people that he was not here. I personally did not observe him. I am not going to make a credibility call on this, but I have the power to either exclude him or not. I am not going to exclude him. So you may call him.

In *Redditt v. State,* 337 Md. 621, 630, 655 A.2d 390 (1995), the Court of Appeals opined, "When . . . the trial court was notified of an apparent violation by the witness of the order of sequestration, it was then incumbent upon the trial judge to make an investigation pursuant to the discretionary power vested as to the imposition of any sanction." In the instant case, the trial court conducted a thorough investigation by allowing witness testimony and cross-examination by opposing counsel. When faced with contrary testimony concerning Lewis's presence in the courtroom, we cannot say that the court abused its discretion either by determining that Lewis had not been present or by allowing him to testify.

■■■ Further, appellant's counsel accuses the judge of personally testifying that she witnessed appellees' counsel deliver documents. In response, appellees maintain that the judge was merely stating her recollection that, while the parties were in her chambers, appellees' counsel provided appellant's counsel with documents to review as acknowledgment that the documents had been received. We agree. The court was not testifying that appellees' counsel provided appellant's counsel with the disputed discovery documentation. Such a recollection does not demonstrate bias or prejudice that warrants recusal.

Essentially, the arguments of appellant's counsel asserting prejudice by the trial judge devolve upon two observations made by the judge: that appellees' counsel provided appellant's counsel with documents while in chambers and that another case against BLIC had been dismissed because of the failure by appellant's counsel to appear. Considering the voluminous testimony and intensive arguments regarding discovery disputes heard prior to, during, and after trial, it is apparent that a reasonable person would not reasonably believe that the trial judge acted partially. To the contrary, the judge allowed the parties to develop fully their positions before adjudicating the issues presented. We said, in *Tibbs,* that the trial court "exhibited the patience of Job," although it should have exercised more control over counsel. *Tibbs,* 72

Md.App. at 255, 528 A.2d 510. The trial judge, in the instant case, certainly was tested like Job and, we believe, exhibited remarkable restraint under the circumstances.

## II

■ On June 22, 1998, the first day of trial, appellant's counsel filed a motion to disqualify Barrett Freedlander, who is BLIC's general counsel and corporate secretary as well as a partner in the law firm of Weinberg & Green, BLIC's counsel. Appellant contends that the trial court erred by denying the motion to disqualify Freedlander. According to appellant, Freedlander's signature on BLIC's answers to interrogatories created dual roles that constituted a conflict of interest and improperly allowed him to use the attorney-client privilege as both a shield and a sword. BLIC, in response, asserts that the court properly denied the motion because it was untimely and prejudicial.

The final date for filing motions in the case was February 25, 1998. Appellant concedes that he was aware of Freedlander's dual roles as early as May 1997, even though he did not file the motion until the first day of trial. Appellant did not learn, however, that Freedlander executed the answers to interrogatories until April 22, 1998. Nevertheless, appellant inexplicably waited for two months to file the motion. The following exchange occurred on June 22, 1998:

> [APPELLANT'S COUNSEL]: The motion to exclude Barrett Freedlander, an attorney in this case.
>
> THE COURT: All right. Also, that was filed too late. You have known about what he was doing for months.
>
> . . .
>
> [APPELLANT'S COUNSEL]: But, Your Honor, we had to—there were certain motions that we were going to discuss, pre-trial motions.
>
> THE COURT: But you don't do it with the trial judge; you do it on a motions calendar, which has nothing to do with the trial judge, and Judge Weinstein basically

found that you waived all these motions because you did not timely file them.

[APPELLANT'S COUNSEL]: Do we have a ruling from Judge Weinstein?

THE COURT: Yes. I will rule on them if you want me to rule on them. I am not going to disqualify Mr. Barrett Freedlander. This motion was filed too late.

It was filed on the morning of trial. These facts have been known that he is corporate secretary for the defendant[,] [BLIC], and also a partner in Weinberg & Green and that this conflict was known to [appellant] way before today's date and should have been filed before.

We have held that "[w]ide discretion as to the course of the trial is vested in the trial court, and the exercise thereof will not be reversed absent an abuse of discretion." *Braxton*, 91 Md.App. at 397, 604 A.2d 543. Because appellant was aware of Freedlander's dual role approximately one year before filing the motion, the court did not abuse its discretion by refusing to disqualify him.

■ Furthermore, appellant was not prejudiced by the court's denial of the motion for disqualification. Appellant's counsel sought to call Freedlander to testify as a fact witness concerning appellant's defamation claim. When the court asked for a proffer, appellant's counsel submitted that Freedlander gave a bad reference about appellant to another insurance company. The parties then argued as follows:

[APPELLANT'S COUNSEL]: He uttered defamatory words about my client. He made himself a witness in this case by signing these four answers to interrogatories.

[APPELLEES' COUNSEL]: Your Honor, if you read the acknowledgment [sic], he clearly doesn't sign them under personal knowledge. He signs them as a personal representative—

[APPELLANT'S COUNSEL]: No. He signed them as counsel, and he signed them as a fact witness.

THE COURT: Where does it say "fact witness"?

[APPELLANT'S COUNSEL]: He is an officer.

[APPELLEES' COUNSEL]: It says, "I, Barrett Freedlander, an officer of [BLIC], am duly authorized by [BLIC] to execute these answers to interrogatories under oath on its behalf. I have read"—

THE COURT: All right. I am going to allow you to call him to the stand. But, I am going to really limit your interrogation of him. And you cannot get into any attorney-client privilege matters. But, your proffer to me—

. . .

THE COURT: Well, your proffer to me is that he made a defamatory statement about your client.

[APPELLANT'S COUNSEL]: Yes.

THE COURT: All right. Well, it is limited to that and—

Subsequently, appellant's counsel was able to examine Freedlander in the jury's presence regarding the alleged defamatory statements he made about appellant. Thus, the question of attorney-client privilege is not implicated because legal advice given by Freedlander was not an issue that appellant's counsel raised in his proffer.

The argument of appellant's counsel is that appellant was prejudiced because Freedlander was able to serve as a fact witness while effectively avoiding questions covered by the attorney-client privilege.[10] Counsel, however, did not make any proffer to the court about information that he sought from Freedlander that was protected by the attorney-client privi-

---

10. We do not find convincing appellant's argument that Freedlander waived the attorney-client privilege by signing the answers to interrogatories as a corporate secretary. Appellant mistakenly relies on precedent holding that a client waived the privilege by publishing a book that disclosed privileged information. *See Agnew v. State,* 51 Md.App. 614, 650–51, 446 A.2d 425 (1982).

lege. It appears that appellant's counsel sought inquiry into statements Freedlander allegedly made relating to his refusal to answer appellant's interrogatories. Such an inquiry was irrelevant to the trial proceedings and was properly rejected by the court.

■ Appellant's submission that Freedlander used the attorney-client privilege as both a sword and shield also is misplaced. Appellant relies on *ST Systems Corp. v. Maryland Nat'l Bank,* 112 Md.App. 20, 35, 684 A.2d 32 (1996), for the proposition that a client may not use the advice of counsel as a sword to prove his case and still assert the attorney-client privilege to prevent disclosing harmful information. In *ST Systems,* however, the advice of counsel was only one reason that a party gave for taking the action that was the center of the dispute. The other reasons—defenses—were testified to at trial. Thus, we ruled that there was no prejudice due to the evocation of the attorney-client privilege because that issue was "nothing more than a smoke screen intended to blur our judicial vision and take us off our adjudicatory path." *Id.* at 36, 684 A.2d 32. Equally, in the instant case, appellees did not use advice of counsel as an element of the defamation defense and counsel's sword and shield argument is no more than a smoke screen. Thus, having cleared the air, we shall move to appellant's next contention.

### III

■ Appellant asserts that the trial court erred by denying his motion for a mistrial. A trial judge's denial of a motion for a mistrial will not be disturbed absent a clear showing of abuse of discretion. *See Owens–Corning Fiberglas Corp. v. Garrett,* 343 Md. 500, 517, 682 A.2d 1143 (1996). The focus of our inquiry is whether the court's denial of the motion egregiously prejudiced appellant. *See Braxton v. State,* 123 Md.App. 599, 667, 720 A.2d 27 (1998). The Court of Appeals elaborated:

The declaration of a mistrial is an extraordinary act which should only be granted if necessary to serve the ends of

justice.... The trial judge, who hears the entire case ... is in the best position to determine if the extraordinary remedy of a mistrial is appropriate. We will not reverse a trial court's denial of a motion for mistrial unless the defendant was so clearly prejudiced that the denial constituted an abuse of discretion.

*Hunt v. State,* 321 Md. 387, 422, 583 A.2d 218 (1990), *cert. denied,* 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991).

In the case *sub judice,* appellant argues that the court's discovery rulings were erroneous and prejudiced his right to a fair trial. Appellant's counsel initially moved for a mistrial on the first day of trial based on the alleged failure by BLIC's counsel to respond to discovery disputes. The following exchange occurred after the court inquired into the foundation for the motion by appellant's counsel:

> [BLIC'S COUNSEL]: Your Honor, [BLIC] has answered the only interrogatories served on it. As pleadings indicate in the file, we received a second set of interrogatories. That is what it was called.
>
> We objected because we said we never received the first, and they were answered. We produced over a thousand pages of documents in response to a document request....
>
> THE COURT: They haven't answered any discovery, have they?
>
> [BLIC'S COUNSEL]: No, Your Honor, or provide[d] a single document, not one document. In response, they came up with this first [set of] interrogatories.
>
> We checked the court file. The Clerk's Office can't find any Notice of Service being filed for that earlier set. We had no knowledge of it.
>
> We answered the only discovery sent to us, and we haven't received our discovery request, which is the subject of our motion for sanctions.

THE COURT: All right. Let me—I said this earlier when you were downtown. Judge Weinstein wants this case to go to trial.

He said all discovery disputes are waived because you did not set a motions date. The plaintiff has to take it upon itself or the defense to go to the motions calendar and set a motions [date].

The trial judge does not hear these matters at this late date.

[BLIC'S COUNSEL]: Your Honor, as a matter of fact, the last time I was in the courthouse to get a protective order, I tried to raise that issue and I was specifically told that the trial judge would be the judge to take care of that.

Additionally—

THE COURT: At that time, you had passed the discovery cut[-]off deadline.

Appellant's counsel made the motion for mistrial, again alleging that he had not been provided with discovery for the "first" set of interrogatories. Appellant's counsel, however, did not file a certificate of service until a year after interrogatories were allegedly mailed, and BLIC's counsel denied receiving them. It cannot be said that appellant was egregiously prejudiced considering that he also was delinquent in waiting to file pre-trial motions until long after the deadline for discovery had passed. The court's repeated refusal to consider during trial the parties' discovery disputes does not constitute prejudice, much less the kind of extreme prejudice that would warrant a mistrial.

■ On the second day of trial, appellant's counsel renewed his motion for a mistrial without stating a different basis for the motion. The court responded, "No, I am denying that. There are no grounds for a mistrial." Finally, appellant's counsel moved for a mistrial at the conclusion of the fourth day of trial, the penultimate day, because the administrative judge only had allotted four days for the trial. It is

well settled that the trial judge has discretion regarding the course of the trial, and we will not belabor the point other than to mention that it was within the court's discretion to continue the trial beyond the number of days allotted by the administrative judge.

## IV

■ Appellant next argues that the court erred by permitting Mark Ewing to testify because he had been present in the courtroom in violation of the court's sequestration order. As previously discussed in Section I, however, the court conducted a full evidentiary hearing and decided within its discretion that the evidence did not prove that a sequestration violation had occurred. Furthermore, there is no evidence that the testimony Lewis allegedly overheard influenced his own testimony. Thus, even if Lewis had been in the courtroom, without evidence of influence, a *per se* exclusion is not warranted. *See Redditt*, 337 Md. at 629, 655 A.2d 390 (holding that the violation of a sequestration order does not result in an automatic exclusion of the witness's testimony); *see also Frazier v. Waterman Steamship Corp.*, 206 Md. 434, 445–46, 112 A.2d 221 (1955) (concluding that suppression of testimony would not develop the truth when it was improbable that the witness could have been told anything substantial based on the new testimony given in court). As a result, the trial court did not err by permitting Lewis to testify.

## V

Appellant finally submits that the trial court erred by allowing the jury to consider the fraud count within BLIC's counterclaim. On February 19, 1998, BLIC filed a counterclaim that included counts of fraud and breach of contract by appellant. BLIC amended the counterclaim on March 16, 1998, adding a count for breach of fiduciary duty. Appellant moved on April 15, 1998 to dismiss the amended counterclaim. During the first day of trial, the following occurred:

[APPELLANT'S COUNSEL]: Secondly, I have a motion to dismiss the counterclaim. I have no idea—

THE COURT: I will rule on that at the close of all the evidence. I am not going to rule on it till [sic] we have the whole case.

I am taking it under advisement.

[APPELLANT'S COUNSEL]: ... What I need to tell Your Honor on the record is that the motion to dismiss the counterclaim is very significant in terms of what happens today.

The determination of the motion to dismiss.

THE COURT: Well, try the case as if the fraud count is in there. Just try it as if it is in there.

As a result, the trial judge did not rule on the motion to dismiss the counterclaim until the close of all the evidence. At that time, the court heard argument from the parties and determined that there was sufficient evidence to create a jury question as to whether appellant submitted fraudulent documents to BLIC to receive higher commissions.

 With respect to the assertion that the trial court erred by deferring her decision on the motion to dismiss until the close of the evidence, Maryland Rule 2–322(c) (1999) provides that a motion to dismiss shall be decided before trial, "except that a court may defer the determination of the defense of failure to state a claim upon which relief can be granted until the trial." Appellant's April 15, 1998 motion to dismiss requested that the court "DISMISS [BLIC's] Counterclaim with prejudice for failure to state a claim for which relief can be granted." As appellant points out, the court, by deferring a decision on the motion until the close of all of the evidence, transformed the motion into a motion for summary judgment. Rule 2–322(c) provides that the motion only becomes a motion for summary judgment if "matters outside the pleading are presented." Appellant's motion to dismiss, ruled on after presentation of the evidence, was effectively transformed into a motion for summary judgment or a motion for

judgment, denial of which resulted in submitting the issues therein for consideration by the jury.

Other than quoting his counsel's assertion to the trial court that there was not a "scintilla of evidence" of fraud, appellant does not provide any argument in support of his contention that the evidence was insufficient to create a jury question. Thus, we shall not tarry long in disposing of this issue other than to state that BLIC presented testimony of numerous BLIC policyholders, demonstrating that appellant was involved in the creation of fraudulent forms and that BLIC attempted to rectify the damages. In addition, BLIC presented evidence of its investigation, which included a hand-writing expert who confirmed many of the forgeries. Thus, there was sufficient evidence to generate a jury question regarding appellant's alleged fraud, and the trial court did not err by denying appellant's motion to dismiss or for judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**